CHARLES P. WARWICK, GEORGE R. ELDER, JR., ET AL., trading as partners under the name of Warwick & Co., *v.* IDA CARR ADDICKS.

(*March* 25, 1931.)

HARRINGTON, J., sitting.

*Christopher L. Ward, Jr.,* (of Marvel, Morford, Ward and Logan) for plaintiffs.

*Aaron Finger* (of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, Sums. Case, No. 168, May Term, 1930.

HARRINGTON, J., charging the jury:

This is an action of assumpsit by Charles P. Warwick, George R. Elder, Jr., and others, trading as partners under

the name of Warwick and Company, against Mrs. Ida Carr Addicks.

The plaintiffs claim that they were stock brokers in both Wilmington and the city of New York in October and November, of 1929, and both prior and subsequent to that time; that Mrs. Addicks had carried a margin account with them since 1927, and that pursuant to the power and authority given them by her they had the right, in their discretion, to buy or sell for her account such securities as they deemed proper; that pursuant to this authority, they bought and held for her account securities to a considerable amount; that the panic of 1929 began on October 24, 1929, and that the market prices of all securities then sharply declined; that on that day and in the month of November of the same year, they, therefore, sold the securities then held by them, belonging to Mrs. Addicks, in the regular and usual way on the market, and at the then market prices, but that the amounts realized from such sales were less than the amounts that Mrs. Addicks owed them for moneys advanced by them in the purchase of stocks for her by $13,905.10. They, therefore, claim that that amount with interest from November 20, 1929, is due them from Mrs. Addicks; and this action is based on that claim.

On behalf of Mrs. Addicks, it is admitted that she has carried a margin account with the plaintiffs' firm since the year 1927, and that as her agents they had a right to buy and sell securities for her account, and to advance moneys for her, for that purpose, but it is denied that the management of such account was wholly within their discretion and not governed by the usual rules applicable to the relation of principal and agent.

It is also admitted that the securities held in her margin account when sold brought, including commission charges on the various transactions, $13,905.10 less than the amount that had been advanced by the plaintiffs in the transactions purporting to have been made on her behalf.

It is further contended on behalf of Mrs. Addicks:

1. That though the plaintiffs were claiming to act as agents for her, they failed to exercise the requisite degree of care and diligence required of an agent in administering the affairs of a principal; and that by reason of that fact she has suffered damages to a much greater amount than the balance claimed to be due them on her account.

2. That the relation of principal and agent between Mrs. Addicks and the plaintiffs terminated in December, 1928, or more than ten months before the stock sales claimed to have been made for her account in October and November, of 1929; that such sales were, therefore, made without authority on the part of the plaintiffs and that she has been damaged thereby more than the amount claimed to be due the plaintiffs.

In support of the first contention, it is claimed that conditions in the stock market were such that if the plaintiffs as her agents had used due and reasonable care, they would have sold all of the stocks in their possession belonging to Mrs. Addicks prior to October 24, 1929, or certainly on that day; nor would they have purchased for her account certain stocks which were alleged to have been of a highly speculative nature shortly after October 24 and on which substantial losses were subsequently taken.

In support of the second contention, the claim is made that by reason of a stroke of some character Mrs. Addicks was mentally incompetent to transact business after December, of 1928; that the plaintiffs knew that fact and that their right to act as agent for her either in the sale or purchase of stocks had, therefore, ceased long prior to October and November, of 1929.

Such are the claims of the parties, but the right of the matter is for you to determine from the rules of law as laid down by the Court and applied by you to the evidence before you.

■ As in all civil cases, the plaintiffs must prove their case by the preponderance of the evidence. By this, however, I do not mean by the mere number of the witnesses, but by the weight of the evidence under all the facts and circumstances proved before you.

■ The relation of an agent to his principal is ordinarily that of a fiduciary, and, as such, it is his duty in all dealings concerning or affecting the subject matter of his agency to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal. 2 *C. J.* 692.

■ A broker with the power to buy and sell securities for another is an agent for such person and in general his duty toward his client in transactions for the account of such client is to exert himself with reasonable diligence in his behalf, but he is not bound to use any more than reasonable care and diligence in the discharge of his duties; that is, he is bound to do only that which good business men of the same grade and locality are accustomed to do under similar circumstances; or, that which a prudent man would do in regard to his own affairs. 4 *R. C. L.* 270, 271; 9 *C. J.* 529, 535.

■ This general standard of care may, however, be varied by express agreement between the broker and his principal, and such agreement will bind both parties. Therefore, where the broker is instructed to act according to his best judgment, and he does so, or where his authority or duty to sell is wholly discretionary, in the absence of fraud, he is not usually answerable for any resulting losses. 4 *R. C. L.* 280; 9 *C. J.* 529; *Wornkow v. Clews, 52 N. Y. Super. Ct.* 176.

■ If he acts in all respects in accordance with his contract and his instructions from his principal, and at the same time uses reasonable diligence in carrying out transactions for his principal's account, he cannot usually be held liable for losses resulting to his principal from market fluctuations.

What the plaintiffs' contract with Mrs. Addicks was and if her account with them was not a purely discretionary one to be managed entirely in accordance with what they deemed best for her interests, whether the plaintiffs did or did not use due and reasonable care under the circumstances is for you to determine from the evidence.

In considering whether the plaintiffs did or did not exercise reasonable care and diligence in managing the stock transactions in question, and in failing to sell prior to October 24, 1929, or, at least, on that date, you must carefully consider conditions not only in October and November, of 1929, but for some time prior thereto, insofar as they have been described by the evidence.

One of the questions for you to determine is whether the relation of principal and agent existed between the plaintiffs and Mrs. Addicks after December, 1928.

In considering whether agency existed in October and November, of 1929, and, therefore, whether Mrs. Addicks could be charged with losses growing out of sales by the plaintiffs claimed to have been for her as her agent pursuant to previous general authority given in this respect, in either of these months, even though there was no lack of due and reasonable care on the part of such plaintiffs, you must consider and apply the following rules of law to the facts of this case.

In 1 *Meechem on Agency* (2d Ed.), § 676, the author says:

"The act of every agent exercising a bare power or authority (and it is not denied that the plaintiffs were in that class), necessarily presupposes the existence of a principal competent to perform the same act in his own behalf. It is his will that is being carried out through the medium of the agent. If, for any reason, therefore, the principal becomes incapable of acting and exercising an intelligent will in regard to the transaction, an essential element in the relation is lacking, and, while that element remains absent, the further exercise of the relation must be suspended." See, also, *Davis v. Lane*, 10 N. H. 156; *M. & W. Ref. Co. v. McMahon's Adm'r*, 38 N. J. Law 536; *Drew v. Nunn*, [1878] 4 Q. B. D. 661.

In *Section* 677 of the same work on agency the author also says:

"It is the general rule, therefore, that the after-occurring insanity of the principal, or his incapacity to exercise any volition upon the subject by reason of an entire loss of mental power, operates as a revocation or suspension for the time being of the authority of an agent acting under a bare power. \* \* \* The insanity here referred to, of course, means something more than mere mental weakness or delusions respecting particular matters. It must be either general dementia or, at least, such unsoundness as renders the principal incapable of acting with reference to those matters to which the authority relates." See, also, 2 *C. J.* 552; *Drew v. Nunn,* [1878] 4 *Q. B. D.* 661; *Davis v. Lane,* 10 *N. H.* 156.

■ To state the rule in somewhat different language, before one's capacity to contract will be destroyed by unsoundness of mind, her reasoning powers must be so impaired as to render her actually incapable of comprehending and acting rationally in the transactions in which she is engaged through her agent. The insanity or mental disease relied on must have a direct bearing upon her capacity to so act in the transactions in question. It must be such as to render her incapable of comprehending the nature and effect of her contract with her agent, and incapable of understanding and exercising her will in relation to the acts delegated to him.

■ I will further add that lack of mental capacity is never presumed, but must be proved by the party alleging it by the preponderance of the evidence.

■ For the rules above announced to apply to this case and for the admitted agency of the plaintiffs for Mrs. Addicks to be revoked or suspended by lack of mental capacity on her part, it must not only appear to your satisfaction that her condition was such as to make it impossible for her to act rationally and intelligently with respect to the matters to which the delegated authority related, but it must also appear that the plaintiffs knew that fact. *Meechem on Agency,* § 678.

Whether your verdict shall be for the plaintiffs or for the defendant is for you to determine.

If, after considering the evidence, you believe that the defendant was mentally capable of transacting business rationally and understandingly after December, of 1928, and when the sales in question were made, or, even if she was not, that the plaintiffs did not know of her absolute lack of mental capacity; or if there was no such lack of mental capacity that the plaintiffs used due and reasonable care and diligence in handling the defendant's account entrusted to their care; or, even if they did not use due care, that they had unlimited authority and discretion as to the management of such account by agreement with defendant, your verdict should be for the plaintiffs.

If, however, you believe that the plaintiffs did not have, by agreement with the defendant, unlimited discretion and authority with respect to the management of her account and that they failed to exercise due and reasonable care in handling such account; and that she was, in fact, damaged thereby to an amount in excess of the plaintiffs' claim, your verdict should be for the defendant.

I will also add that if you believe that the defendant was mentally incompetent of transacting business of the character involved in this case after December, of 1928, rationally and understandingly, and that the plaintiffs knew it, all agency powers delegated to the plaintiffs were then revoked or suspended, and if the defendant suffered losses by reason of the plaintiffs thereafter claiming to act on her behalf, and such losses exceeded the plaintiffs' claim, your verdict should also be for the defendant.

If your verdict shall be for the plaintiffs, it shall be for such an amount as you shall find to be due them from the defendant.

If your verdict shall be for the defendant, it should merely be, "We find for the defendant."

Verdict for the defendant.