**In the Matter of FIVE MINOR CHILDREN.**

Supreme Court of Delaware.

Submitted Dec. 13, 1978.*

Decided Aug. 24, 1979.

William E. Moore, Gary A. Myers of Community Legal Aid Society, Inc., Georgetown, and Jeanette Ganousis, St. Louis, Mo., for appellants.

Roger A. Akin, Deputy Atty. Gen., Wilmington, for appellee.

---

* Letter memoranda on legal matters were received subsequent to the December 13, 1978 oral argument. The latest of such letters was received on August 15, 1979.

Before HERRMANN, C. J., and DUFFY, QUILLEN and HORSEY, JJ., constituting the Court en Banc.

QUILLEN, Justice:

This case involves an appeal from a Superior Court order terminating the parental rights of the respondents. . . .

Respondents contend that, by application of due process standards, 13 *Del.C.* § 1103(4), the statute making unfitness a ground for termination of parental rights,[1] is unconstitutionally vague, indefinite and overbroad. This same issue was raised in the case of *In re Dingee*, Del.Supr., 328 A.2d 139 (1974). The Court found that the words "not fitted" had sufficient common usage and dictionary meaning so that § 1103(4) was not unconstitutional for vagueness. As to petitions for termination of parental rights, the words "not fitted" mean "unfitted for parental duties". In addition, the Court stated that "[n]o inflexible rule can or should be laid down . . ., but each case must be decided on its own peculiar facts." 328 A.2d at 140. After careful consideration, we reaffirm *Dingee*.[2] As this Court said recently, "unfitness does not require precise definition to be constitutionally sound". *In the Matter of Three Minor Children*, Del.Supr., 406 A.2d 14 (1979). Indeed, it is difficult to conceive a statute which could particularize a spectrum of optional circumstances that could cover parental unfitness. But we have no doubt that a statutory authorization to terminate parental rights on such ground serves a legitimate social end and should be legislatively permissible.

▇▇▇ To justify depriving a parent of his natural parental rights, the evidence of unfitness must be positive and not comparative. *In re Dingee, supra*, 328 A.2d at 140. The State cannot terminate parental rights by showing it is in the best interests of the children without showing the parents were unfit. *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 555, 54 L.Ed.2d 511, 520 (1978). But, under our statute, there must also be a finding that the termination of parental rights is "in the best interests of the child". 13 *Del.C.* § 1108(a); *Cline v. Hartzler*, Del.Supr., 227 A.2d 210, 212 (1967).[3]

▇▇▇ The parents' unorthodox lifestyle or unfortunate economic status is obviously an insufficient basis for the termination of parental rights even if the Trial Judge feels the child's best interests would be better served by such a termination. The United States Supreme Court in *Smith v. Organization of Foster Families*, 431 U.S. 816, 834, 97 S.Ct. 2094, 2105, 53 L.Ed.2d 14 (1977), recently said:

"Studies also suggest that social workers of middle-class backgrounds, perhaps unconsciously, incline to favor continued placement in foster care with a generally higher-status family rather than return the child to his natural family, thus reflecting a bias that treats the natural

1. 13 *Del.C.* § 1103(4) provides the statutory grounds for termination of parental rights and reads in part as follows:

"The procedure for termination of parental rights for the purpose of adoption or, if a suitable adoption plan cannot be effected, for the purpose of providing for the care of the child by some other plan which may or may not contemplate the continued possibility of eventual adoption, may be initiated whenever it appears that: . . .

"(4) The parent or parents of any such child, or any person or persons or organization holding parental rights over such child are not fitted to continue to exercise parental rights; . . . ."

2. We have particularly considered *Alsager v. District Court of Polk County, Iowa*, S.D.Iowa,

406 F.Supp. 10 (1975), aff'd, 8th Cir., 545 F.2d 1137 (1976) and *Davis v. Smith*, Ark.Supr., 583 S.W.2d 37 (1979), upon which respondents have relied heavily.

3. 13 *Del.C.* § 1108(a) provides:

"Should the Court find the termination of existing parental rights and their transfer to be in the best interests of the child, it shall make an order terminating such rights in the parent or parents, person or persons or organization in which they have existed and transferring them to some other person or persons or authorized agency or the State Department of Health and Social Services as may, in the opinion of the Court, be best qualified to receive them."

parents' property and lifestyle as prejudicial to the best interests of the child."

Unfitness cannot be based on poverty and lifestyle which do not reflect a lack of concern for and ability to care for the children or an unwillingness to receive the children as part of a family.

■ Before considering the factual determinations of the Superior Court on the issues of unfitness and best interests of the children, we turn to the legal issues of the burden of proof and the evidentiary propriety of the social reports which are raised as error in this appeal.

Respondents contend that the standard of proof applicable to a proceeding to terminate parental rights should be the "beyond a reasonable doubt" standard. This standard is applied to criminal proceedings where the interests of society are pitted against an individual. *Speiser v. Randall*, 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, 1462 (1958). The "preponderance of the evidence" standard is applied in civil proceedings since, as one observer commented, it is "no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor." *In re Winship*, 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368, 379 (1970) (Harland, J., concurring).

In analyzing the instant context, attention has naturally been focused on the recent United States Supreme Court decision in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) and this Court has had the advantage of post argument letters from counsel dealing with that case. In that case, the nation's highest Court found that the clear and convincing evidence standard should apply to involuntary civil commitments to mental institutions. The Court said:

"In cases involving individual rights, whether criminal or civil, 'the standard of proof [at a minimum] reflects the value society places on individual liberty' . . . [w]e must be mindful that the function of legal process is to minimize the risk of erroneous decisions."

Significantly, however, the Court rejected the reasonable doubt standard.

As we view it, a proceeding seeking termination of parental rights is a civil proceeding, not a penal one, and there is no basis for imposing the burden of proof of a criminal prosecution. *Warwick v. Addicks*, Del.Super., 157 A. 205, 206 (1931). Moreover, the *Addington* case differs from this case in that the court there was weighing the interests of the individual against those of the State, whereas in parental right termination proceedings, the interests of the child are at least on a par with the interests of the parents. The State also has a legitimate interest in the proceeding here. After consideration of *Addington*, we do not find that it affects the decision here.

In short, this termination of parental rights proceeding under § 1103(4) is a civil proceeding. We are concerned not only with the rights of the parents, but also the best interests of the children. The applicable standard, in our view, should remain the "preponderance of the evidence" standard. Our view would appear to have support in other jurisdictions. See: *In the Matter of S.*, Or.App., 26 Or.App. 219, 552 P.2d 578 (1976); *In the Matter of R___E___W___*, Tex.Supr., 545 S.W.2d 573 (1976); 13 Trial: *The National Legal Magazine*, No. 10 at 30 (October 1977). Compare: *State v. Robert H.*, N.H.Supr., 393 A.2d 1387 (1978); *Alsager v. District Court of Polk County, Iowa*, S.D.Iowa, 406 F.Supp. 10 (1975), aff'd 8th Cir., 545 F.2d 1137 (1976). The model statute for termination of parental rights prepared by the National Council of Juvenile Court Judges provides for a preponderance of the evidence standard. *Family Law Reporter-Reference File*, p. 201:0070.

■ Turning to the evidentiary issue concerning the social report, we have considerable difficulty with the general use of the social report, over objection, as evidence in a contested case. We note that the stat-

ute, in a case where the petition is brought by the State Department of Health and Social Services, requires that a social report "be attached to the petition". 13 *Del.C.* § 1105(c). The Statute does not expressly require its automatic admission into evidence over objection in a contested case. Moreover, in light of the fundamental parental rights at stake, we have further difficulty finding support for a policy that would relax evidentiary standards in this class of cases even if constitutionally permissible. Therefore, we note that the better practice, which we adopt herein, would be to apply normal evidentiary standards to the social report or portions thereof in contested cases. The problem of the general admission of the several reports is, of course, highlighted by expert testimony based, without personal examination of the persons affected, on the assumption that the entire social report, much of which may have no independent support in the evidence, is correct. That was done in this case with respect to the State's experts and we find it was error.

■ But error in the general admission of the social report does not require reversal in light of the determinations of the Superior Court. Every fact relied on by the Superior Court in support of its findings is established by evidence independent of the social report.

.    .    .    .:    .

The judgment of the Superior Court is affirmed.