## DOE ᴇᴛ ᴀʟ. *v*. DELAWARE

No. 79–5932.   Argued January 12, 1981—Decided March 9, 1981

*Gary A. Myers* argued the cause for appellants.   With him on the briefs was *Michael Boudin.*

*Regina Mullen Small*, State Solicitor of Delaware, argued the cause for appellee.   With her on the brief were *John A. Parkins, Jr.,* Assistant State Solicitor, and *Roger A. Akin, Thomas M. LaPenta*, and *Timothy A. Casey*, Deputy Attorneys General.*

Pᴇʀ Cᴜʀɪᴀᴍ.

The appeal is dismissed for want of a properly presented federal question.

Jᴜsᴛɪᴄᴇ Bʀᴇɴɴᴀɴ, with whom Jᴜsᴛɪᴄᴇ Wʜɪᴛᴇ joins, dissenting.

Appellants, a half brother and sister, are the natural parents of five children who were in the custody of the Division of Social Services of the Delaware Department of Health and Social Services at the beginning of this litigation.[1]   After de-

---

*\*Carol R. Golubock, Daniel Yohalem,* and *Marian Wright Edelman* filed a brief for the American Orthopsychiatric Association et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* were filed by *Marcia Robinson Lowry* and *Bruce J. Ennis* for the American Civil Liberties Union; by *Janet Fink, Carol Sherman, Jane M. Sufian,* and *Henry S. Weintraub* for the Legal Aid Society of the City of New York, Juvenile Rights Division; and by *Douglas J. Besharov* and *Robert M. Horowitz* for the National Association of Counsel for Children et al.

[1] This Court granted appellants' motion to seal the record, 445 U. S. 949 (1980), and the pseudonyms John Doe and Jane Roe have been substituted for appellants' real names.

termining that the children should be put up for adoption,[2] the Division filed suit pursuant to Delaware law to obtain termination of appellants' parental rights over their children. The Superior Court of Delaware ordered termination, and the Supreme Court of Delaware affirmed.[3] Appellants appealed to this Court, arguing that the termination order and the Delaware statute authorizing it were unconstitutional. We noted probable jurisdiction. 445 U. S. 942 (1980).

The Court today dismisses this appeal for want of a properly presented federal question, thereby permitting the termination order to remain in effect despite the existence of a substantial federal constitutional challenge to the Delaware statutory scheme under which the order was entered.[4] Because I believe that the federal question *was* properly presented within the definition of that requirement in our cases, I dissent from this dismissal. Instead, I would vacate the judgment below, and remand for reconsideration in light of

---

[2] See Tr. of Oral Arg. 35. The Division has apparently not made any formal arrangements for adoptive homes for the children. See Del. Code Ann., Tit. 13, §§ 907–908 (1975) (making termination of the parental rights of the natural parents a prerequisite to adoption in the absence of the consent of the natural parents).

[3] The order of termination issued orally by the Superior Court on September 12, 1975, App. to Juris. Statement 5b, was initially reversed by the Delaware Supreme Court for failure to decide whether termination of parental rights was in the best interests of the children, as required by Del. Code Ann., Tit. 13, § 1108 (1975). App. to Juris. Statement 1c. On remand, the Superior Court concluded that Doe and Roe "are incapable of providing proper care for their children," and that "it is in the best interests of the children that their parental rights of the children be terminated." *Id.,* at 3d. The Delaware Supreme Court affirmed. *In re Five Minor Children,* 407 A. 2d 198 (1979).

[4] The Court apparently does not question the *substantiality* of the federal question presented by this appeal, since it is dismissing the appeal "for want of a properly presented federal question" rather than "for want of [a] substantial federal question," *e. g., Black* v. *Payne,* 438 U. S. 909 (1978), or "for want of a properly presented substantial federal question," *e. g., Greenwald* v. *Maryland,* 363 U. S. 721 (1960).

supervening changes in the factual circumstances and the applicable state law.

I

Appellants challenge the constitutionality of certain portions of the former Del. Code Ann., Tit. 13, §§ 1101–1112 (1975), in effect while this litigation was pending in the state courts. These provisions established a "procedure for termination of parental rights for the purpose of adoption or, if a suitable adoption plan cannot be effected, for the purpose of providing for the care of the child by some other plan which may or may not contemplate the continued possibility of eventual adoption." § 1103. Petitions for termination of parental rights could be filed by certain specified categories of persons, including the Division. § 1104 (8). Upon a finding by the Superior Court that the parents were "not fitted to continue to exercise parental rights," § 1103 (4), and that termination of existing parental rights would be "in the best interests of the child," the court was required to issue an order of termination, and to transfer parental rights to another person, organization, or agency. § 1108 (a). The effect of the termination order was "that all of the rights, duties, privileges and obligations recognized by law between the [parents] and the child shall forever thereafter cease to exist as fully and to all intents and purposes as if the child and the [parents] were and always had been strangers." § 1112. Either an order of termination or the consent of the natural parents was required before children in the custody of the State could be placed for adoption. §§ 907–908.

Appellants argue here, as they did at each stage of the litigation in the state courts, that this statutory scheme for termination of parental rights was invalid under the United States Constitution. Specifically, they contend: (1) that Del. Code Ann., Tit. 13, § 1103 (4) (1975), which provides for such termination where the parent is "not fitted," is unconstitutionally vague and indefinite; (2) that a higher

standard than the mere "preponderance of the evidence" is required to terminate parental rights; and (3) that substantive due process forbids termination of parental rights in the absence of a demonstration of a compelling state interest, in the form of specific findings of existing or threatened injury to the child.[5] There is no doubt that appellants raised their federal constitutional claim in a timely manner in both the Superior Court[6] and the Supreme Court[7] of Delaware, nor that the Delaware Supreme Court explicitly considered and rejected the federal constitutional challenge.[8]

Dismissal of this appeal for want of a properly presented federal question is, therefore, unwarranted. The practice in this Court has been to dismiss an appeal taken under 28 U. S. C. § 1257 (2) for want of a properly presented federal question only when the federal question was not raised at the proper juncture in the state-court proceedings or in accordance with reasonable state rules. *Jones* v. *Florida,* 419 U. S. 1081, 1083 (1974) (BRENNAN, J., dissenting); *Godchaux Co.* v. *Estopinal,* 251 U. S. 179, 181 (1919); R. Stern & E. Gressman, Supreme Court Practice 380–381 (5th ed. 1978).[9] See,

---

[5] Appellants' first argument "draw[s] in question the validity of a statute of [a] state on the ground of its being repugnant to the Constitution . . . of the United States," and is therefore within this Court's appellate jurisdiction. 28 U. S. C. § 1257 (2). We may therefore assume jurisdiction to decide the second and third issues in the case as well. *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 487, n. 14 (1975); *Prudential Ins. Co.* v. *Cheek,* 259 U. S. 530, 547 (1922).

[6] App. to Juris. Statement 2i–6i, 8i.

[7] Opening Brief for Appellants in No. 259 (Del. Sup. Ct.) 2, 8–36; Reply Brief for Appellants in No. 259 (Del. Sup. Ct.) 1–21.

[8] 407 A. 2d, at 199–200.

[9] In *Pearson* v. *Dodd,* 429 U. S. 396 (1977), an appeal from the Supreme Court of Appeals of West Virginia was dismissed "for want of a properly presented federal question." *Id.,* at 398. A reading of the *per curiam* opinion in *Pearson* reveals, however, that the dismissal should have been styled "for want of a substantial federal question," for the Court determined that the appellant had "no constitutionally protected property or entitlement interest" upon which to base her claim. *Ibid.*

*e. g., Street* v. *New York,* 394 U. S. 576, 581–585 (1969);
*Safeway Stores, Inc.* v. *Oklahoma Retail Grocers Assn.,* 360
U. S. 334, 342, n. 7 (1959); *Raley* v. *Ohio,* 360 U. S. 423,
434–435 (1959); *Bailey* v. *Anderson,* 326 U. S. 203, 206–207
(1945); *Asbury Hospital* v. *Cass County,* 326 U. S. 207, 213–
214 (1945); *Charleston Federal Savings & Loan Assn.* v.
*Alderson,* 324 U. S. 182, 185–187 (1945); *Hunter Co.* v. *Mc-
Hugh,* 320 U. S. 222, 226–227 (1943); *Pennsylvania R. Co.*
v. *Illinois Brick Co.,* 297 U. S. 447, 462–463 (1936); *Whitney*
v. *California,* 274 U. S. 357, 360–361 (1927); *Live Oak Water
Users' Assn.* v. *Railroad Comm'n,* 269 U. S. 354, 357–359
(1926); *Rooker* v. *Fidelity Trust Co.,* 261 U. S. 114, 116–117
(1923); *Zadig* v. *Baldwin,* 166 U. S. 485, 488 (1897); *Crowell*
v. *Randell,* 10 Pet. 368, 391–392, 398 (1836); cf. *Cardinale* v.
*Louisiana,* 394 U. S. 437, 438–439 (1969) (dismissal of writ
of certiorari); *Beck* v. *Washington,* 369 U. S. 541, 549–554
(1962) (same).[10]  If the record shows that a federal consti-
tutional challenge to a state statute was brought to the atten-
tion of the state court "with fair precision and in due time,"
then "the claim is . . . regarded as having been adequately
presented." *New York ex rel. Bryant* v. *Zimmerman,* 278
U. S. 63, 67 (1928).  Indeed, if the highest state court

---

[10] Dismissal for want of a properly presented federal question is dis-
tinguishable from dismissal because of the inadequacy of the record for
deciding the question presented, *e. g., Cowgill* v. *California,* 396 U. S. 371,
372 (1970) (Harlan, J., concurring); *Mitchell* v. *Oregon Frozen Foods
Co.,* 361 U. S. 231 (1960) (dismissal of writ of certiorari); but cf. *Villa* v.
*Van Schaick,* 299 U. S. 152, 155–156 (1936) (judgment on appeal vacated
and remanded because of the inadequacy of the record), and from dis-
missal because problems of construction and interpretation of state law
preclude addressing the constitutional issues "in clean-cut and concrete
form," *e. g., Rescue Army* v. *Municipal Court,* 331 U. S. 549, 584 (1947).
In the instant case, since appellants' challenge to the Delaware termina-
tion-of-parental-rights statutes does not depend on the specific facts of the
case, and since the Supreme Court of Delaware has resolved the questions
of statutory interpretation relevant to this appeal, dismissal on the latter
grounds would not be appropriate.

reaches the federal constitutional question and decides it on the merits, this Court will consider the case despite any possible failure of the litigants to raise the federal question in compliance with state procedural requirements. *Charleston Federal Savings & Loan Assn.* v. *Alderson, supra,* at 185–186; *Louisville & Nashville R. Co.* v. *Higdon,* 234 U. S. 592, 598 (1914); see *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 476 (1975).

Since appellants challenged the constitutionality of the Delaware statutory scheme at each stage of the state-court litigation, and the Delaware Supreme Court expressly addressed the issue, ruling that the termination-of-parental-rights procedure was constitutional, this Court's dismissal of the appeal for want of a properly presented federal question is unprecedented and inexplicable.[11]

---

[11] *Naim* v. *Naim,* 350 U. S. 985 (1956), is not to the contrary. In *Naim,* we dismissed the appeal for want of a properly presented federal question. In an earlier appeal in the same case, 350 U. S. 891 (1955), we vacated the judgment of the Supreme Court of Appeals of Virginia, and remanded for further proceedings. Our order explained:

"The inadequacy of the record as to the relationship of the parties to the Commonwealth of Virginia at the time of the marriage in North Carolina and upon their return to Virginia, and the failure of the parties to bring here all questions relevant to the disposition of the case, prevents the constitutional issue of the validity of the Virginia statute on miscegenation tendered here being considered 'in clean-cut and concrete form, unclouded' by such problems. *Rescue Army* v. *Municipal Court,* 331 U. S. 549, 584." *Ibid.*

On remand, the Supreme Court of Appeals of Virginia adhered to its decision, and noted that the record reflected the relation of the parties to the Commonwealth both before and after the marriage. *Naim* v. *Naim,* 197 Va. 734, 735, 90 S. E. 2d 849, 850 (1956). This Court's subsequent dismissal of the appeal from that decision for want of a properly presented federal question is best understood, therefore, as attributable to "the failure of the parties to bring here all questions relevant to the disposition of the case." 350 U. S., at 891. In the instant case, there is no such failure.

## II

The living situation of appellants and their children has changed dramatically since the trial court proceedings in this case. Doe and Roe have ceased to live together, thus ending the incestuous relationship that formed the predicate for the Superior Court's original judgment of unfitness. See App. to Juris. Statement 5b. According to their attorney, Doe now resides in another State, while Roe has married and now lives with her husband and his child in Delaware. Tr. of Oral Arg. 4. Doe and Roe have not seen their five children since 1975.[12] The children, who ranged in age from 11 months to 4 years old when the Superior Court issued its first order of termination in 1975, are now about 6 to 9 years old. The children have never lived together as a family, and are now in four separate placements. Appellants' attorney stated at oral argument that "the eventual goal of the mother" is to obtain custody of her children, and that she would permit the father to visit them. *Id.*, at 3. There is no evidence on any of these matters in the record because it has been closed since December 1976. *Id.*, at 39.

Moreover, Del. Code Ann., Tit. 13, § 1103 (1975), was amended, effective July 11, 1980, to alter the standard for termination of parental rights. Instead of requiring a finding of "unfitness" as a predicate for termination, the new statute provides for termination if the parents "are not able, or have failed, to plan adequately for the child's physical needs or his mental and emotional health and development" and:

"a. In the case of a child in the care of an authorized agency:

"1. The child has been in the care of an authorized

---

[12] Appellants state that the reason they have not seen their children since 1975 is that the Division did not permit them to visit. Brief for Appellants 10, n. 17. The record does not reflect, however, when or how often appellants attempted to see their children.

agency for 1 year, or there is a history of previous placement or placements of this child, or a history of neglect, abuse, or lack of care of other children by this parent; and

"2. The conditions which led to the child's placement still persist, and there appears to be little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future.

"b. In the case of a child in the home of the stepparent or blood relative:

"1. The child has resided in the home of the stepparent or blood relative for a period of at least 1 year; and

"2. The Court finds the noncustodial parent or parents incapable of exercising parental responsibilities, and that there appears to be little likelihood such parent or parents will be able to exercise such parental responsibilities in the foreseeable future." Del. Code Ann., Tit. 13, § 1103 (5) (Supp. 1980).[13]

As stated in *Bell* v. *Maryland,* 378 U. S. 226, 237 (1964), this Court has "long followed a uniform practice where a supervening event raises a question of state law pertaining to a case pending on review here. That practice is to vacate and reverse the judgment and remand the case to the state court, so that it may reconsider it in the light of the supervening change in state law." In the exercise of our jurisdiction under 28 U. S. C. § 1257, this Court has the power "not only to correct error in the judgment under review but to make such disposition of the case as justice requires." *Patterson* v. *Alabama,* 294 U. S. 600, 607 (1935). And, as Chief Justice Hughes further observed in *Patterson:* "[I]n determining what justice does require, the Court is bound to con-

---

[13] In order to require termination of parental rights, the Court must also make a "best interests of the child" determination as required by Del. Code Ann., Tit. 13, § 1108 (1975), which was not affected by the 1980 amendments.

sider any change, either in fact or in law, which has supervened since the judgment was entered. We may recognize such a change, which may affect the result, by setting aside the judgment and remanding the case so that the state court may be free to act." *Ibid.* See *Giles* v. *Maryland,* 386 U. S. 66, 80 (1967) (plurality opinion); *Thorpe* v. *Housing Authority,* 386 U. S. 670, 673–674 (1967); *Trunkline Gas Co.* v. *Hardin County,* 375 U. S. 8 (1963); *Wolfe* v. *North Carolina,* 364 U. S. 177, 195, n. 13 (1960); *Williams* v. *Georgia,* 349 U. S. 375, 389–391 (1955); *State Farm Mutual Automobile Ins. Co.* v. *Duel,* 324 U. S. 154, 161 (1945); *Ashcraft* v. *Tennessee,* 322 U. S. 143, 155–156 (1944); *Walling* v. *James V. Reuter, Inc.,* 321 U. S. 671, 676–677 (1944); *New York ex rel. Whitman* v. *Wilson,* 318 U. S. 688, 690–691 (1943); *Vanderbark* v. *Owens-Illinois Glass Co.,* 311 U. S. 538, 542 (1941); *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511, 515–516 (1939); *Honeyman* v. *Hanan,* 300 U. S. 14, 25–26 (1937); *Villa* v. *Van Schaick,* 299 U. S. 152, 155 (1936); *Pagel* v. *MacLean,* 283 U. S. 266, 268–269 (1931); *Missouri ex rel. Wabash R. Co.* v. *Public Service Comm'n,* 273 U. S. 126, 130–131 (1927); *Dorchy* v. *Kansas,* 264 U. S. 286, 289, 291 (1924); *Gulf, C. & S. F. R. Co.* v. *Dennis,* 224 U. S. 503, 505–507, 509 (1912); see also *Piccirillo* v. *New York,* 400 U. S. 548, 556, n. 2 (1971) (BRENNAN, J., dissenting from dismissal of writ of certiorari).[14]

---

[14] In *Sanks* v. *Georgia,* 401 U. S. 144 (1971), this Court dismissed an appeal from the Supreme Court of Georgia after both the factual circumstances of the case and the applicable state law had so changed that the "focus of [the] lawsuit [had] been completely blurred, if not altogether obliterated, and our judgment on the important issues involved [had become] potentially immaterial." *Id.,* at 152. The effect of dismissing in *Sanks,* however, was identical to vacating and remanding, because the appeal was from an interlocutory order, and the appellants were able to raise both state and federal claims, based on the altered circumstances and law, on remand. *Id.,* at 148–150. Moreover, it was doubtful that the federal constitutional question in *Sanks* continued to present a justiciable controversy sufficient to support Supreme Court jurisdiction in light of the

The instant case falls squarely within the principle of *Bell* and *Patterson*. The change in the factual circumstances and in the applicable state statute might well produce a different result under Delaware law. This Court should not decide what effect these changes might have under state law,[15] or how the Supreme Court of Delaware might decide this case under the new circumstances and amended statute.[16] See *Bell* v. *Maryland*, 378 U. S., at 237. Nor, however, should we "ignore the supervening change in state law and proceed to decide the federal constitutional questions presented by this case. To do so would be to decide questions which, because of the possibility that the state court would now reverse the [order of termination], are not necessarily presented for decision." *Ibid.;* see *id.,* at 241; *Missouri ex rel. Wabash R. Co.* v. *Public Service Comm'n, supra,* at 131; *Gulf, C. & S. F. R. Co.* v. *Dennis, supra,* at 507.

## III

To argue that the proper disposition of this case is to vacate and remand rather than to dismiss for want of a properly presented federal question is not merely to quibble over words. Appellants in this case are parents who have been irrevocably separated from their children by process of

changed circumstances. Dismissal was therefore an appropriate disposition. To similar effect is *United States* v. *Fruehauf,* 365 U. S. 146 (1961).

[15] That this Court has the *power* to decide for itself what effect the changes would have on the outcome of this case is not doubted. See *Missouri ex rel. Wabash R. Co.* v. *Public Service Comm'n,* 273 U. S. 126, 131 (1927); *Steamship Co.* v. *Joliffe,* 2 Wall. 450, 455–459 (1865). We have recognized, however, that the exercise of this power is at times "inconsistent with our tradition of deference to state courts on questions of state law." *Bell* v. *Maryland,* 378 U. S. 226, 237 (1964). To avoid this "pitfal[l]," we have adopted a policy of vacating and remanding the judgment where the effect of supervening events presents a question of state law. *Ibid.*

[16] Appellants did not seek a remand in state court based on the changed factual circumstances. Tr. of Oral Arg. 12–14.

a state law they contend is unconstitutional. To vacate and remand is to recognize that supervening events have made further state-court proceedings necessary before this Court can reach the constitutional questions; to dismiss is to end the litigation, leaving Doe and Roe without any means to vindicate their parental rights.[17] See *Pagel* v. *MacLean, supra,* at 269; *Gulf, C. & S. F. R. Co.* v. *Dennis, supra,* at 509.

The appellate jurisdiction of this Court is not discretionary. *Hicks* v. *Miranda,* 422 U. S. 332, 344 (1975). Having raised a federal constitutional challenge to the former Del. Code Ann., Tit. 13, § 1103 (4) (1975), under which their parental rights were terminated, and having received a final judgment from the highest court of the State upholding the statute and affirming the termination order, appellants have a *right* to appellate review. I can discern no basis for dismissing this appeal for want of a properly presented federal question, and therefore respectfully dissent.

JUSTICE STEVENS, dissenting.

The wisdom of the Court's policy of avoiding the premature or unnecessary adjudication of constitutional questions is well established. See *Rescue Army* v. *Municipal Court of Los Angeles,* 331 U. S. 549, 568–575. That policy provides

---

[17] I express no opinion on whether appellants would be eligible for relief under Rule 60 of the Rules of Civil Procedure for the Superior Court of Delaware, which permits the Superior Court to "relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason justifying relief from the operation of the judgment."

Nor do I mean to imply that the State, as custodian of the children, is without countervailing interest in obtaining a prompt resolution of this controversy. Until the order of termination is made final, the children may not be placed for adoption. Del. Code Ann., Tit. 13, §§ 907, 908 (1975). As this Court recognized in *Smith* v. *Organization of Foster Families,* 431 U. S. 816, 833–838 (1977), the "limbo" in which children remain between leaving the care of their natural parents and entering the care of permanent adoptive parents may have deleterious consequences for them.

some support for the Court's otherwise inexplicable conclusion that the three federal questions raised by this appeal are somehow not "properly presented."[1]  That policy also would provide some support for JUSTICE BRENNAN's view that this case should be remanded to the Delaware courts for further proceedings before this Court addresses any of the federal issues.  In my opinion, however, both the Court's disposition and JUSTICE BRENNAN's proposed disposition are inadequately supported by that policy because adjudication of one of the federal questions presented in this case would be neither premature nor unnecessary.

To explain my position, I shall focus on the question whether the Due Process Clause of the Fourteenth Amendment requires that the termination of parental rights be supported by a higher standard of proof than a mere preponderance of the evidence.[2]  For the reasons stated by the Court

---

[1] Appellants raise three constitutional objections to the termination order entered against them.  See BRENNAN, J., dissenting, *ante*, at 384–385.  In their brief on the merits, appellants argue the following questions:

"1. Is the Delaware statute, which provides for the permanent termination of the parent-child relationship where the parent is 'not fitted,' unconstitutionally vague and indefinite in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

"2. In light of the protected nature of the family relationship under decisions of this Court, does the Due Process Clause and this Court's decision in *Addington* v. *Texas*, 441 U. S. 418 (1979), preclude the termination of the parent-child relationship based upon a mere 'preponderance of the evidence'?

"3. Under the Due Process Clause, must the state demonstrate a compelling state interest, by making specific findings of existing or threatened harm to the child, before terminating the parent-child relationship?" Brief for Appellants 3.

See also Juris. Statement 2–3.

[2] If the standard-of-proof issue were not presented, I would agree with JUSTICE BRENNAN's proposed disposition.  Because the substance of the unfitness standard has been revised in the new statute, see *ante*, at 388–389, the other two questions raised by appellants should be remanded to the Delaware Supreme Court for consideration in light of the new statute, after

in *Addington* v. *Texas,* 441 U. S. 418, that question is undeniably substantial. For the reasons stated by JUSTICE BRENNAN, *ante,* at 384–387, there is no procedural defect in the record that provides a legitimate basis for the Court's conclusion that the question is not "properly presented" in this case. In my opinion, the Court has the duty to decide that question now because there is no reason to believe that delay will affect either the character of the question or the necessity of deciding it in this case. Unlike JUSTICE BRENNAN, I believe that neither the change in the status of the appellants nor the change in the Delaware statute justifies a remand for further state-court proceedings without first deciding whether the Federal Constitution requires that an order terminating parental rights be supported by clear and convincing evidence.

Neither in the Supreme Court of Delaware nor in this Court have appellants argued that the change in their living situation subsequent to the entry of the termination order is a sufficient basis for setting aside that order.[3] Of course, if there is an independent basis for vacating the order—or if the state court decided to rely on postjudgment events to set aside its own decision—a new proceeding to determine the welfare of appellants' children undoubtedly should consider

a decision by this Court on the merits of the standard-of-proof question. The new statutory language would clearly be relevant to these questions if, as a matter of state law, the new statute is applicable in this termination proceeding.

[3] Appellants did not seek a remand in the Delaware Supreme Court based upon the change in their status. See BRENNAN, J., dissenting, *ante,* at 391, n. 16. That court was informed of the changed circumstances, see App. to Juris. Statement 5a; Tr. of Oral Arg. 11–14, 29–30, but it apparently concluded that the new circumstances did not warrant a remand to the trial court in the absence of a request by one of the parties. In their opening brief in this Court, appellants do not even mention that the factual circumstances have changed, and in their reply brief they allude to their present status only in the vaguest of terms. It was only at oral argument that appellants' counsel squarely addressed the details of their present living situation.

recent, as well as ancient, history. I do not believe, however, that such recent events—which are unrelated to the federal questions that support our appellate jurisdiction—provide an appropriate basis for this Court to exercise its power to vacate the judgment of the Delaware Supreme Court.

Nor, in my opinion, does the enactment of the new Delaware statute make it appropriate for us to vacate the judgment of the Delaware Supreme Court. This is not a case like *Bell* v. *Maryland,* 378 U. S. 226, in which the State has made lawful the conduct that formed the basis of a criminal conviction pending on appeal,[4] or otherwise has taken action that significantly changed the federal question presented by an appeal to this Court. None of the parties and none of the many *amici curiae* suggest that the new Delaware statute has changed the standard of proof required by Delaware law.[5]

---

[4] As the Court noted in *Bell:*

"Petitioners' convictions were affirmed by the Maryland Court of Appeals on January 9, 1962. Since that date, Maryland has enacted laws that abolish the crime of which petitioners were convicted." 378 U. S., at 228.

In addition, it is not at all clear that the Delaware courts would regard the enactment of the new statute as a reason to modify or vacate the termination order entered against appellants. In *Bell*, the Court emphasized the fact that under Maryland law the supervening change in the governing criminal statute probably would result in reversal of the petitioners' convictions by the state courts. See *id.*, at 230–237. In this case, we do not know what effect, if any, the new statute is likely to have on termination proceedings initiated and substantially completed prior to its enactment. The State of Delaware, in its brief in this Court, has not suggested that the new statute has any bearing, as a matter of state law, on this litigation.

[5] Both the original and the revised statutes are silent with respect to the standard of proof applicable in termination proceedings. The Delaware Supreme Court, in its consideration of the standard-of-proof issue in this case, did not rely upon any specific language of the termination statute, but rather based its conclusion primarily upon the civil, nonpenal

If it was unconstitutional to apply the preponderance-of-the-evidence standard at the 1972 termination proceeding, it would be equally unconstitutional to apply that standard at a new proceeding held under the revised statute. Because the constitutionality of applying that standard in a case of this kind is now squarely at issue, I believe we have the power and the obligation to resolve this federal question *before* any further proceedings are conducted.

As the Court stated in *Patterson* v. *Alabama,* 294 U. S. 600, 607, we have the power "not only to correct error in the judgment under review but to make such disposition of the case as justice requires." See BRENNAN, J., dissenting, *ante,* at 389. In my judgment, justice requires that we promptly resolve the critical federal question properly presented in this case, because this litigation involves the family status of growing children [6] and because this federal question is certain to reappear before us in the same form at a later date. Accordingly, I would decide the standard-of-proof question and thereafter either remand to the Delaware Su-

---

nature of termination proceedings in Delaware. See App. to Juris. Statement 9a–11a; *In re Five Minor Children,* 407 A. 2d 198, 200 (1979). Nothing on the face of the new statute suggests that it will be interpreted to change the civil nature of Delaware termination proceedings. Thus, even if the new statute would be applicable in this case as a matter of state law, the federal constitutional question would remain the same.

[6] The initial termination order was entered in 1975. Appellants have not seen their five children, now ranging in age from 6 to 9 years old, since that time. The children are presently in four separate foster homes, and apparently have never lived together as a family. Because of the pendency of this proceeding, the children have been separated from each other and from their natural parents, and also have been ineligible for adoption because of the statutory requirement that the rights of the natural parents be finally terminated before adoption can take place without their consent. See Del. Code Ann., Tit. 13, §§ 907, 908 (1975). Further delay in a proceeding of this nature may well frustrate whatever hope remains that these children will ever be able to enjoy the benefits of a secure and permanent family environment.

preme Court for consideration of the two remaining questions in light of the new statute or remand for a new trial under the correct standard of proof, depending upon how that question is resolved by a majority of the Members of this Court.

I respectfully dissent.