**In the Matter of the Welfare of C.L.L., C.W.L., Jr., and C.C.L.**

**Nos. 49914, 50557.**

Supreme Court of Minnesota.

Oct. 2, 1981.

William R. Kennedy, County Public Defender, and E. George Widseth, Asst. Public Defender, Minneapolis, for appellant.

Thomas L. Johnson, Co. Atty., and Sara E. Wahl, Asst. County Atty., Minneapolis, for respondent.

SCOTT, Justice.

This is an appeal by Carl Locke from an order of the Hennepin County District Court, Juvenile Division, terminating his parental rights and those of his wife, Carol Feather Locke, with respect to their three children. Mrs. Locke is not appealing the order.

The children in question were born in 1972, 1973, and 1976.

The Hennepin County Welfare Department first became involved with the family in 1974. Appellant had disappeared and Mrs. Locke had left the children with a neighbor. The neighbor called the police after getting tired of caring for the children.

In the ensuing years the welfare department had to make an "incredible" number of placements of the children either in the shelter or in foster homes. Typically, Mrs. Locke would go on a drinking binge and not return, and appellant, after caring for the children a couple of days, would call the welfare department and ask it to take care of the children because he could not.

Although Mrs. Locke had the more serious drinking problem, appellant had one also and he had demonstrated by his conduct that he was completely unable to care for the children when Mrs. Locke was on a binge because he was more interested in finding and being with her. Indeed, throughout this entire proceeding, he has demonstrated that he is more interested in the welfare and whereabouts of Mrs. Locke than in the welfare of the children.

The welfare department tried numerous resources and treatment programs to help the family, none with any success. Mrs. Locke occasionally would begin a program but appellant would not even do that, even though the welfare department caseworker "begged" him to do so.

The parents last had custody in 1977. Petitions alleging that the children were neglected were filed, and after a hearing held in the district court, juvenile division, the court on July 28, 1977, transferred custody for foster home placement. The treatment plan called for return of the children to the parents if the parents secured treatment and abstained from alcohol use.

However, neither parent sought help. Appellant completely denied he had any problem and ignored the pleadings of the caseworker that he get counseling. Their drinking continued and they often missed visits with the children, even on significant dates in the lives of the children. Similarly, they have not had steady jobs and they have moved frequently.

The petition for termination was filed in January 1978, and the hearing was held on several different days in May, July and October 1978, with the evidence indicating no change in conduct.

Appellant and his wife testified in October 1978 that they wanted to change their ways and, thus, the trial court, although ordering termination, stayed the order and granted them one last chance. Specifically, he set four conditions: (a) total abstinence, (b) regular visits with the children, (c) staying in the same residence unless evicted, and (d) maintaining steady employment or vocational training.

On January 29, 1979, when the hearing resumed, neither appellant nor his wife was present even though they had been notified of the hearing. The evidence at the hear-

ing indicated that they had continued drinking, had missed many scheduled visits with the children, had quit their jobs, and had moved to Wisconsin, saying that they intended to stay there.

The trial court then vacated the stay, stating that in its opinion the parents were simply unable to put the children's interests ahead of their own. On remand for findings, the trial court found the following facts:

1. The father is completely dependent upon the mother to provide daily care for the children, particularly for the youngest, and places them in foster care whenever she is unavailable or disabled.

2. The father missed eight out of sixteen weekly visits ordered by the Court between October 13, 1978, the date of the Court's Order, and January 29, 1979, the date of the Review Hearing. The foster home was completely cooperative about arranging visits to suit the father's schedule. The father was warned both in Court and by the social worker that keeping the visits was an important criterion in determining his interest in the children.

3. Despite a history of instability of residence and though warned by the Court not to move but rather to demonstrate an ability to provide the children with stability of residence, the father moved once through no fault of his own and two months later he moved again into a location too remote for meaningful contact with the children. His reason for the second move was to attend his mother during her hospitalization. After her recovery from hospitalization he continues to reside with her.

4. Despite a history of job instability and despite warning by the Court that he must demonstrate an ability to maintain stability of employment, the father quit his job and apparently has secured no new employment but is relying on the largess of his mother and upon his wife's Indian aid payments.

5. The father failed to appear at the crucial hearing in January, 1979, well knowing that at this hearing the Court would make a decision as to whether he had demonstrated any minimum ability to provide care and nurture for the children or whether the children were entitled to other parents.

The court concluded as follows:

6. The father is unable to provide the children with a meaningful family environment, with reliable care and attention, or with a stabilized life-style for their nurture and development.

7. The children are entitled to a secure and consistent home and should not be held in suspense awaiting further efforts by the father to stabilize his life.

■ 1. Mr. Locke's constitutional challenge to the statute is two-fold. He argues, first, that the statute is unconstitutionally vague on its face as applied to him and second, that the state has failed to show a compelling state interest for the abridgment of his fundamental right to family integrity such that he has been deprived of substantive due process.

These issues are important issues which are being raised in courts throughout the country up to and including the United States Supreme Court. These issues were raised in this court in *In the Matter of the Welfare of J.W.M.*, 290 N.W.2d 770 (Minn. 1980), but were not reached because termination there was reversed on the ground that it was unjustified by the evidence and the findings. The United States Supreme Court has also avoided the issues. *See Doe v. Delaware*, 450 U.S. 382, 101 S.Ct. 1495, 67 L.Ed.2d 312 (1981). For a scholarly discussion of the issues, see Note, *Developments in the Law—the Constitution and the Family*, 93 Harv.L.Rev. 1156, 1231–1242 (1980).

The appellant cannot now for the first time raise constitutional issues that were not raised in the trial court.

■ 2. The other issue is whether the trial court's findings are sufficient to justify termination and are supported by sufficient evidence.

The state in its brief candidly admits that the trial court's findings are not couched in the language of the statute, as they should be, but argues that they establish a justification for termination under Minn.Stat. § 260.221(b)(4) (1976),[1] which authorizes termination if "the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child."

We agree. Appellant and his wife were given over 4 years to work out their problems. Their conduct during the 3-month period of the stay of termination, when they knew they had to change their conduct or they would lose the children, was positive proof of their total lack of commitment to doing what had to be done to save their children.

We also note that the ground for termination stated in subsection (7)—"that the child is neglected and in foster care"—was not enacted in time to apply to this case but that the ground appears to fit the parental conduct in this case almost perfectly. *In the Matter of the Welfare of H.G.B.*, 306 N.W.2d 821 (Minn.1981).

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.

---

1. The current version of Minn.Stat. § 260.-221(b)(4) (1980) reads as follows:

That a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child.