*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0348**

DuPrece Lashae Slaughter, petitioner,
Appellant,

vs.

Anissa Lachelle Black,
Respondent,

Lisa Danielle Willis,
Respondent.

**Filed December 8, 2014
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-FA-12-5449

John M. Jerabek, Susan Lach, Tuft, Lach & Jerabek, PLLC, Maplewood, Minnesota (for appellant)

Anissa Lachelle Black, Shoreview, Minnesota (pro se respondent)

Diana Longrie, Longrie Law Office, Maplewood, Minnesota (for respondent Lisa Danielle Willis)

Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges the district court's third-party custody determination, arguing that (1) the service requirements for commencing the proceeding were not satisfied, (2) the record does not support the district court's determination that respondent was the de facto custodian, (3) the district court abused its discretion by granting appellant limited parenting time, and (4) the district court erred by denying appellant's fundamental right to care for his child. We affirm.

## FACTS

Appellant Duprece Lashae Slaughter and respondent Anissa Lachelle Black are the parents of D.D.S., who was born in March 2008. Slaughter and Black never married and separated when D.D.S. was less than a year old. Following the separation, Black dated Michael Allen, who lived with his mother, respondent Lisa Willis. From late 2009 through January 2011, Black and D.D.S. lived with Allen in Willis's home. In January 2011, Black and Allen moved into an apartment, where D.D.S. briefly lived with them. Black brought D.D.S. back to live with Willis a few months later because of financial difficulties. D.D.S. has continuously resided with Willis since then.

Slaughter lost contact with Black when D.D.S. was two years old, and made no effort to visit or parent D.D.S until he learned, in July 2012, that D.D.S. was living with Willis. He then filed for custody. Willis appeared at the initial case-management conference, and the district court granted her intervenor status. Following the

conference, the parties failed to reach an agreement regarding Slaughter's parenting time, and a guardian ad litem (GAL) was appointed to advise the district court.

In January 2013, Willis filed a motion for third-party custody of D.D.S., asserting that she was his de facto custodian. Slaughter subsequently moved to vacate the previous order joining Willis as an intervenor. The district court denied the motion as moot on the ground that Willis had become a party by properly serving and filing her custody motion. In the same order, the district court granted Willis temporary custody of D.D.S. Willis interposed a separate petition for third-party custody, which was consolidated with Slaughter's action.

After a three-day evidentiary hearing, the district court determined that Willis is D.D.S.'s de facto custodian, and awarded her sole legal and physical custody. The court awarded Slaughter parenting time on alternating Sundays from 10:00 a.m. to 4:00 p.m. and granted Black a similar allotment of time on alternating Saturdays. Slaughter appeals.

## D E C I S I O N

### I.   Willis satisfied the service requirements for initiating a third-party custody proceeding.

Whether service of process was effective, and personal jurisdiction therefore exists, is a question of law that we review de novo. *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008). In conducting this review, we "apply the facts as found by the district court unless those factual findings are clearly erroneous." *Id.*

Slaughter contends that the district court did not have personal jurisdiction over him because neither he nor Black was served with Willis's petition for third-party custody. We disagree. Sworn affidavits show that Slaughter was served in person at the sheriff's office and by substituted service through his girlfriend, Christina Ogletree, at his home. The district court expressly discounted Slaughter and Ogletree's contrary testimony as not credible. We defer to a district court's credibility determinations. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

Moreover, Slaughter waived any defense to personal jurisdiction. First, he did not raise the defense in his answer and counter-petition. *See* Minn. R. Civ. P. 12.08(a) (personal jurisdiction is waived if not raised as a defense by motion or in a responsive pleading). Second, Slaughter actively participated in all aspects of the consolidated proceeding, submitting to the district court's jurisdiction. *See Comm'r of Natural Res. v. Nicollet Cnty. Pub. Water/Wetlands Hearings Unit*, 633 N.W.2d 25, 31-33 (Minn. App. 2001) (finding that party waived personal-jurisdiction defense by actively participating in proceedings), *review denied* (Minn. Nov. 13, 2001). On this record, we conclude the district court did not clearly err in finding that service was proper and that Slaughter waived his personal-jurisdiction defense.

**II.**  **The district court did not abuse its discretion by determining that Willis was D.D.S.'s de facto custodian and awarding custody to her.**

We review custody determinations for an abuse of discretion. *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002). A district court abuses its discretion "by making findings unsupported by the evidence or by improperly applying the law." *Pikula*

*v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985).  We will not set aside a district court's findings of fact unless they are clearly erroneous.  *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

A person seeking to be designated as a "de facto custodian" must have been the child's "primary caretaker" for 12 of the 24 months preceding the filing of a custody petition if the child is three years old or older.  Minn. Stat. § 257C.01, subd. 2(a)(2) (2012).  The person must have cared for the child in the absence of a parent and "with a lack of demonstrated consistent participation by a parent," defined as:

> refusal or neglect to comply with the duties imposed upon the parent by the parent-child relationship, including, but not limited to, providing the child necessary food, clothing, shelter, health care, education, creating a nurturing and consistent relationship, and other care and control necessary for the child's physical, mental, or emotional health and development.

*Id.*, subd. 2(a), (c) (2012).  In determining whether the parent has demonstrated consistent participation, the district court must consider:

> (1) the intent of the parent or parents in placing the child with the de facto custodian;
> (2) the amount of involvement the parent had with the child during the parent's absence;
> (3) the facts and circumstances of the parent's absence;
> (4) the parent's refusal to comply with conditions for retaining custody set forth in previous court orders;
> (5) whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence; and
> (6) whether a sibling of the child is already in the petitioner's care.

Minn. Stat. § 257C.03, subd. 6(b) (2012).

5

A third party must establish that she is a de facto custodian by clear and convincing evidence. *Id.*, subd. 6(a)(1) (2012). Once a third party is deemed a de facto custodian, she must prove by a preponderance of the evidence that awarding custody to her is in the child's best interests. *Id.*, subd. 6(a)(2) (2012).[1]

Slaughter does not dispute that Willis cared for D.D.S., without a parent present, for more than a year before he sought custody. But he contends that Willis has not established the second element for de facto custody—that she cared for D.D.S. without "demonstrated consistent participation by a parent"—because Black deprived him of access to his son and Black was consistently involved in D.D.S.'s care. We are not persuaded. The district court determined Slaughter's absence was voluntary, and his assertion that he could not find D.D.S. was not credible. The record supports these findings. Black and Slaughter had mutual acquaintances, one of whom testified that she told Slaughter where D.D.S. was living. Slaughter participated in child-support proceedings commenced in late 2010, which would have enabled him to learn Black's address. Moreover, the GAL testified that Slaughter did not consistently exercise the weekly parenting time he received after he initiated his custody action.

Likewise, the evidence does not support Slaughter's contention that Willis did not meet her burden of proof because Black was consistently involved in caring for D.D.S. during the two years leading up to his custody petition. He notes that Black had an informal parenting-time arrangement with Willis after D.D.S. moved in with her in early 2011. But this arrangement, in and of itself, does not indicate that Black played a

---

[1] Slaughter does not challenge the district court's best-interests determination.

consistent role in D.D.S.'s life. Black testified that during 2011 she saw D.D.S. more than "a couple times a month," but by the end of 2012 she only saw D.D.S. once a month because she had trouble arranging transportation. The only other evidence of Black's parental involvement was her periodic financial support to Willis, which primarily came in the form of holiday gifts and clothing for D.D.S. And Black admitted to the GAL that she was unable to "provide her son with stable housing and basic needs."

The district court carefully weighed the testimony and made detailed credibility determinations as part of its findings. The district court found Slaughter's testimony to generally lack credibility, noting that "[i]n contrast to his testimony on direct [examination], Mr. Slaughter was unable to remember and testify regarding many basic facts during cross-examination." The district court also highlighted specific aspects of Slaughter's testimony that were not credible, such as his statements that D.D.S. does not ask to see Willis during his parenting time and that D.D.S. does not suffer from anxiety. Slaughter's contention that the district court improperly discounted "the unrefuted testimony of all of [Slaughter's] witnesses" is without merit. In fact, the district court's order specifically identifies statements by Slaughter's witnesses that contradict his own testimony.

In sum, the record supports the district court's determination Willis is D.D.S.'s de facto custodian. Because Slaughter does not challenge the district court's best-interests findings, we discern no abuse of discretion by the court in awarding custody of D.D.S. to Willis.

7

**III.    The district court did not abuse its discretion in granting parenting time to Slaughter.**

A district court has broad discretion in deciding parenting-time questions. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). We will not reverse a parenting-time decision unless the district court abused its discretion by making findings unsupported by the evidence or improperly applying the law. *Hagen v. Schirmers*, 783 N.W.2d 212, 215 (Minn. App. 2010). "[T]he ultimate question in all disputes over [parenting time] is what is in the best interest of the child." *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn. App. 1984), *review denied* (Minn. June 12, 1984).

The district court awarded Slaughter parenting time on alternating Sundays, from 10:00 a.m. to 4:00 p.m. This represents a decrease in frequency from the temporary award of supervised parenting time for two hours, every weekend. Slaughter argues that this amounts to a parenting-time restriction that is unauthorized absent a finding that D.D.S. was endangered by his care. *See* Minn. Stat. § 518.175, subd. 5(1) (2012) (providing that the district court may not restrict parenting time unless it finds "parenting time is likely to endanger the child's physical or emotional health"). We disagree. The temporary award was not a baseline parenting-time order from which any change could be measured. *See Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009) (stating that to determine whether a change in parenting time is a restriction, the court must first "identify the order that establishes the baseline parenting-time schedule"). And without a restriction, there was no need for the district court to find endangerment before awarding parenting time as it did. We also note that the district court thoroughly addressed the

8

statutory best-interests factors before awarding parenting time, and Slaughter does not challenge the best-interests findings.

Slaughter also argues that the district court's grant of custody to Willis infringed upon his fundamental right to care for and raise his child. We are not persuaded. First, Slaughter did not raise this issue in the district court and has waived it on appeal.[2] *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Waiver based on the failure to raise an issue before the district court applies even to constitutional questions. *See In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (declining to address a constitutional issue raised for first time on appeal from a termination of parental rights).

Second, the district court did not terminate Slaughter's parental rights. The court awarded him parenting time, and specific measures were put in place to allow him more time with D.D.S. as their relationship develops. We also observe that chapter 257C establishes procedural and evidentiary safeguards to protect parental rights and ensure that custody is not awarded to a third party lightly. A third party seeking custody must prove that she is a de facto custodian by clear and convincing evidence. Minn. Stat. § 257C.03, subd. 6(a)(1). The district court must then determine by a preponderance of the evidence that awarding custody to a third party is in the best interests of the child. *Id.*, subd. 6(a)(2). On this record, we conclude that the third-party custody award does not impermissibly infringe on Slaughter's parental rights.

**Affirmed.**

---

[2] Slaughter has similarly waived his argument that he is entitled to at least 25 percent parenting time under Minn. Stat. § 518.175, subd. 1(e) (2012).