STATE OF MINNESOTA

IN SUPREME COURT

A13-1240

Court of Appeals                                                  Lillehaug, J.
                                                       Dissenting, Page, J.

In re the Matter of: Dakota County,

                  Appellant,

Lorinda Elaine Floding,                                  Filed:  July 22, 2015
                                                    Office of Appellate Courts
                  Petitioner Below,

vs.

Darrell Ray Gillespie,

                  Respondent.

_____

James C. Backstrom, Dakota County Attorney, Sandra M. Torgerson, Assistant Dakota County Attorney, West Saint Paul, Minnesota, for appellant.

Justin R. Anderson, Kratochwill & Anderson, P.A., Elbow Lake, Minnesota, for respondent Darrell Ray Gillespie.

Patrick M. Hest, Jenese V. Larmouth, Assistant Ramsey County Attorneys, Saint Paul, Minnesota, for amicus curiae Minnesota County Attorneys Association.

Lori Swanson, Attorney General, Cynthia B. Jahnke, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae Minnesota Department of Human Services.

David L. Olson, David L. Olson Law Office, Edina, Minnesota, for amicus curiae Minnesota Chapter of the American Academy of Matrimonial Lawyers.

Michael D. Dittberner, Linder, Dittberner & Bryant, Ltd., Edina, Minnesota; and Mary Catherine Lauhead, Law Offices of Mary Catherine Lauhead, Saint Paul, Minnesota, for amicus curiae Family Law Section, Minnesota State Bar Association.

_____

1

If an obligor wants an existing child support obligation to be reduced on account of derivative Social Security benefits paid to the obligee for a joint child, the obligor must bring a motion to modify the existing child support order. The child support obligation then must be recalculated, but any resulting modification is retroactive only to the date of service of notice of the motion to modify.

Reversed and remanded.

## O P I N I O N

LILLEHAUG, Justice.

The obligee of a child support obligation began receiving derivative Social Security benefits on behalf of her children, due to the obligor's eligibility for those benefits. The obligor brought a motion to modify his obligation, asking the court to offset his obligation by the amount of monthly benefits and to give him credit for all the benefits already received. A child support magistrate granted the obligor's motion. The district court modified the child support magistrate's order in part, retaining the offset and clarifying that the amount of the benefits already received by the obligee could be credited against the obligor's prospective obligation. The court of appeals affirmed.

Because the lower courts did not correctly interpret Minnesota's applicable child support statutes, we reverse and remand for further proceedings consistent with this opinion.

On June 23, 2000, in Dakota County District Court, Darrell Gillespie was adjudged to be the father of twin boys. The court ordered Gillespie to pay $1,500 a month for child support. Over time, the obligation increased to $1,977 a month due to cost-of-living adjustments. Dakota County was a party to the proceeding as the mother, Lorinda Floding, had applied for non-public assistance child support services.

Gillespie later retired due to a disability, and began to receive Social Security benefits in February 2012. At the same time, due to Gillespie's eligibility, Floding began to receive $1,748 a month in derivative Social Security benefits on behalf of the children. On July 23, 2012, Gillespie filed a motion to modify his child support obligation. He sought to reduce his obligation by $1,872 a month, citing his reduced income in retirement and the derivative benefits received by Floding. In response, Floding sought an upward deviation in support.

The child support magistrate ("CSM") granted Gillespie's motion in part and offset his prospective child support obligation by the derivative Social Security benefits received by Floding. The CSM denied Gillespie's motion to otherwise modify his child support obligation and Floding's motion for upward deviation. As a result of the CSM's order, Gillespie was only required to pay $229 per month. Additionally, he received credit for the Social Security benefits from the time they commenced. The CSM determined that the total amount of excess payments was $10,488. From that amount, the CSM deducted $3,496 due to the "special needs" of one of the children during the period that the excess payments were made. The CSM then ordered the remaining $6,992 to be

3

applied to any arrearages. If any excess payments remained, the CSM ordered that they "be addressed as provided by statute and/or applied to additional unreimbursed/uninsured expenses verified and undisputed." The CSM concluded that such a credit did not constitute a retroactive modification. The CSM relied on *County of Grant v. Koser*, a court of appeals decision that held the child support statute "does not specify the manner in which the district court must subtract social security benefits from an obligor's child-support obligation, and does not limit the application of a credit to either arrearages or prospective obligations." *Cty. of Grant v. Koser*, 809 N.W.2d 237, 244 (Minn. App. 2012).

Each of the parties sought district-court review of the CSM's order. Gillespie asked the court to adjust several figures from the CSM's order, and asked that the order be amended to read that "the overpayment shall be reduced by crediting the entire amount of the Obligor's monthly obligation to the overpayment until the overpayment is fully satisfied." Floding asked the district court to review the denial of her motion for upward deviation. Floding also argued that the CSM incorrectly relied on *Koser* to credit the excess payments, claiming that *Koser* is inconsistent with Minn. Stat. § 518A.39, subd. 2(e) (2014), which prohibits retroactive modifications except from the date of service of the notice of the motion to modify. Dakota County moved the district court to deny Gillespie's request for review, and also to grant the mother's motion, arguing that any excess payments that remained after being applied to arrearages should be deemed a gratuity, not credited to prospective payments.

4

The district court granted Gillespie's motion for review in part to clarify the CSM's order. The court amended the CSM's order to state that "any [derivative Social Security] overpayment that remains is to be addressed as provided by statute and/or applied to additional unreimbursed/uninsured expenses verified and undisputed . . . and to [Gillespie's] net child support obligation to include prospective child support." The district court similarly relied on *Koser* to conclude that the derivative Social Security benefits already received by Floding could be applied against Gillespie's prospective child support obligation.

Dakota County appealed, and the court of appeals affirmed in an unpublished opinion. *In re Dakota County*, A13-1240, 2014 WL 1272165 (Minn. App. Mar. 31, 2014). The court of appeals declined to overrule *Koser*, and held that "the overpayment received in February through July 2012 [as Social Security benefits] was properly credited against respondent's prospective child-support payments." *Id.* at *4. In addition to *Koser*, the court of appeals relied on Minn. Stat. § 518A.34(f) (2014), which provides that if "Social Security benefits or veterans' benefits are received by one parent as a representative payee for a joint child based on the other parent's eligibility, the court shall subtract the amount of benefits from the other parent's net child support obligation, if any." *Id.* The court of appeals seemingly interpreted "net child support obligation" to mean the existing child support obligation, regardless of when a motion for modification of child support was filed. *Id.* at *2. The court of appeals held that such a credit did not constitute a retroactive modification, as "the amount to which the children were entitled before, during, and after in February through July 2012 has not changed." *Id.* at *4.

5

We granted Dakota County's petition for review.

## II.

The question in this case is whether an obligor is entitled to credit for derivative Social Security benefits received by an obligee on behalf of the children before the obligor serves notice of the motion to modify. The answer requires a careful reading of Minnesota's child support statutes, found in Minnesota Statutes chapter 518A.

## A.

Interpreting a statute is a question of law, which we review de novo. *See Gerber v. Gerber*, 714 N.W.2d 702, 704 (Minn. 2006). The first step in statutory interpretation is "to determine whether the statute is ambiguous on its face." *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014). A statute is ambiguous "when the statutory language is subject to more than one reasonable interpretation." *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012). In order to determine whether a statute is ambiguous, we interpret "words and phrases according to their plain and ordinary meanings." *Jones*, 848 N.W.2d at 535. Additionally, we interpret statutes "as a whole," and "the words and sentences therein 'are to be understood . . . in the light of their context.' " *Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 527 (Minn. 2012) (quoting *Christensen v. Hennepin Transp. Co.*, 215 Minn. 394, 409, 10 N.W.2d 406, 415 (1943)). "Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous." *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013). If a statute is unambiguous, we apply the statute's plain meaning. *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010).

6

Chapter 518A is Minnesota's child support law. The law provides that, in every case of dissolution, legal separation, or annulment involving a minor child, the district court shall make an order for maintenance and support. Minn. Stat. § 518A.38 (2014). A "support order" is "a judgment, decree, or order, whether temporary, final, or subject to modification . . . for the support and maintenance of a child." Minn. Stat. § 518A.26, subd. 21 (2014).

Minnesota Statutes §§ 518A.27-.36 (2014) explain how support is to be calculated for a "final child support order." Minn. Stat. § 518A.34(g). The formula for calculation will be discussed below. Once calculated, the court must decide whether to deviate or not deviate, make written findings under section 518A.37, and enter an order under section 518A.38.

The child support order remains in place unless the district court modifies the order under section 518A.39, "on motion of either of the parties," which the court may do "from time to time." Minn. Stat. § 518A.39, subd. 1 (2014). The court may modify the order respecting both the amount of support money and the payment of it. *Id*. To obtain a modification, a party must show that the terms of the existing order are "unreasonable and unfair." *Id*., subd. 2(a) (2014). Among the showings that may prompt modification are the "substantially increased or decreased" gross income of an obligor or obligee, or the "substantially increased or decreased" need of an obligor, an obligee, or the child. Minn. Stat. § 518A.39, subd. 2(a)(1)-(2).

When a court modifies a child support order, the retroactivity of the order is limited. Section 518A.39, subdivision 2(e) (2014), provides that a modification "may be

7

made retroactive only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party and on the public authority if public assistance is being furnished or the county attorney is the attorney of record." In other words, any modification of support—for whatever underlying reason—may be retroactive only, at the earliest, to the date of service of notice of the motion to modify.

With this structure in mind, we return to the calculation of the child support order. Section 518A.34 contains the formula to compute the presumptive child support obligation of each parent, and contains several sub-formulas. The court initially must determine the obligor's basic support obligation. First, the court determines each parent's gross income, Minn. Stat. § 518A.34(b)(1), including derivative Social Security benefits provided for joint children. Minn. Stat. § 518A.31(a). Next, the court determines the two parental incomes by subtracting any credits for non-joint children. Minn. Stat. § 518A.34(b)(2). Next, the court determines the percentage contribution of each parent by dividing the combined parental income into each parent's individual parental income. Minn. Stat. § 518A.34(b)(3). The court then uses the combined parental income to determine the combined basic support obligation, based on statutory guidelines. Minn. Stat. § 518A.34(b)(4). Next, the court determines the obligor's share of the basic support obligation by multiplying the obligor's percentage contribution by the combined basic support obligation. Minn. Stat. § 518A.34(b)(5). Finally, the court adjusts the obligor's

8

basic support obligation if any parenting expense adjustments apply.[1]  Minn. Stat. § 518A.34(b)(6).  The resulting figure is the obligor's basic support obligation.

In addition to basic care, the court must determine the obligor's child care support and medical support obligations.  Minn. Stat. §§ 518A.34(c)-(d).  The obligee may have a medical support obligation as well.  Minn. Stat. §§ 518A.34(d); 518A.41.  By adding together each parent's obligations for basic support, child care support, and medical support, the court determines each parent's "total child support obligation."  Minn. Stat. § 518A.34(e).

Even with each parent's "total child support obligation" determined, the calculation is still not at an end.  The court then considers whether "Social Security or veterans' benefits are received by one parent as a representative payee for a joint child based on the other parent's eligibility."  Minn. Stat. § 518A.34(f).  (As discussed above, the Social Security benefits have already been made a part of the eligible parent's gross income.)  If so, "the court shall subtract the amount of benefits from the other parent's net child support obligation, if any."  *Id*.  "Net" refers to the difference between the obligor's total support obligation and the obligee's total support obligation.

This portion of the calculation is reinforced by section 518A.31, which not only directs that the Social Security benefits be included in the gross income calculation in section 518A.34, but that the "amount of the benefits shall also be subtracted from the obligor's net child support obligation as calculated pursuant to section 518A.34."  Minn.

---

[1]    A parenting expense adjustment is calculated by taking into consideration each parent's percentage of parenting time.  Minn. Stat. § 518A.36.

Stat. § 518A.31(c). In other words, if the parent on whose behalf Social Security is paying benefits for a joint child has a net obligation (that is, to pay money as an obligor to an obligee), that parent will receive a credit against the obligation. The resulting figure is the obligor's presumptive child support obligation.

As the last step in the calculation, the court may deviate from the presumptive child support obligation to "encourage prompt and regular payments of child support and to prevent either parent or the joint children from living in poverty." Minn. Stat. § 518A.43, subd. 1 (2014). The statute provides a list of factors for the court to consider in determining whether to deviate upward or downward. Minn. Stat. § 518A.43, subd. 1. If the court deviates from the presumptive child support obligation, it must make written findings that state, among other things, the reason for the deviation and "how the deviation serves the best interests of the child." Minn. Stat. § 518A.37, subd. 2. The result is the final child support order.

B.

The court of appeals in both the current case and *Koser* used sections 518A.34(f) and 518A.31(c) to give an obligor credit for derivative Social Security benefits received prior to notice of a motion to modify.[2] The court of appeals misinterpreted the child support statutes. Sections 518A.34(f) and .31(c) are not independent mechanisms to

---

[2] In *Koser*, the court of appeals held that sections 518A.34(f) and 518A.31(c) require a district court to "subtract from the obligor's net child-support obligation *all* social security benefits received by the obligee parent for a joint child based on the obligor parent's eligibility." *Koser*, 809 N.W.2d at 243. The court of appeals then gave the obligor credit for a lump-sum payment of derivative Social Security benefits that had been awarded for a time period prior to notice of the motion to modify. *Id.*

offset an existing obligation by derivative Social Security benefits or to give credit for benefits received in excess of a newly modified order. Rather, derivative Social Security benefits are an integral part of the calculation of the child support order, whether during the original proceeding or upon a motion to modify.

While section 518A.34(f) does say that a court "shall subtract" derivative Social Security benefits from a parent's "net child support obligation," the court of appeals overlooked the context of that provision. Each paragraph in section 518A.34 is part of a greater calculation, starting with gross income and proceeding line by line until ending with the presumptive child support obligation. By the time the district court completes paragraph (e), it has calculated each parent's "total child support obligation." However, that is not the end of the calculation. The court must then take the obligor's net obligation, which is the difference between the total support obligations of the obligor and the obligee, and subtract the derivative Social Security benefits. Thus, paragraph (f) is the final adjustment in calculating the obligor's "presumptive child support obligation," which in turn leads to calculation of the final child support order.

The other statute that discusses derivative Social Security benefits is Minn. Stat. § 518A.31, which provides that the benefits "shall be included in the gross income of the parent on whose eligibility the benefits are based." Minn. Stat. § 518A.31(a). That section also provides that "the benefits shall also be subtracted from the obligor's net child support obligation as *calculated pursuant to section 518A.34*." Minn. Stat. § 518A.31(c) (emphasis added). This section is linked specifically to section 518A.34, which calculates the presumptive child support obligation.

11

Thus, derivative Social Security benefits are added at the beginning of the calculation for computing gross income, and are deducted at the end of the calculation, prior to the determination of whether a deviation is warranted. The structure of section 518A.34 makes it clear that the direction in section 518A.31 is part of this calculation, not a stand-alone provision. The statute is thus clear and unambiguous.

The effects of the correct interpretation are twofold. First, a court may not simply offset an existing obligation by the amount of monthly derivative Social Security benefits. Instead, the court must fully recalculate the child support obligation pursuant to section 518A.34 to account for the change in circumstances.[3] Second, because sections 518A.34(f) and 518A.31 are the only provisions in the statute that relate to derivative Social Security benefits, and because they do not themselves provide an independent, post-order mechanism to account for the commencement of such benefits, it stands to reason that the recalculation must be accomplished by modification of the existing order.[4]

The Legislature could have provided an alternative mechanism to accommodate the commencement of derivative Social Security benefits, but it did not. When the

---

[3]     Derivative Social Security benefits are a significant part of determining the presumptive child support obligation on both ends of the calculation. And such benefits are usually accompanied by other changes in income, due to retirement or disability. Thus, to comply with the statute, a full recalculation is necessary.

[4]     The dissent contemplates that derivative Social Security benefits would be subtracted—not as part of a motion to modify the existing child support order— somehow, by someone, through some unidentified mechanism. Not surprisingly, the dissent does not tell us—nor does the detailed statutory scheme reveal—exactly how an independent subtraction would be accomplished. This is because the statutory scheme already provides a mechanism to account for derivative Social Security benefits: the recalculation and resulting modification of the child support order.

Legislature wants to provide mechanisms other than a formal modification, it knows how to do so. *See* Minn. Stat. § 518A.46, subd. 5(a)(7) (2014) (allowing a public authority to "increase the amount of the monthly support payments by an additional amount equal to 20 percent of the monthly support payment to include amounts for debts or arrearages," if for the purpose of securing overdue support); Minn. Stat. § 518A.75 (2014) (requiring child support orders to "provide for a biennial adjustment in the amount to be paid based on a change in the cost of living"). Instead, the commencement of derivative Social Security benefits does not receive special statutory treatment, and thus requires a motion to modify the child support order, as happens upon any other substantial change in income.[5] *See* Minn. Stat. § 518A.39, subd. 2(a).

Section 518A.39(e), too, is clear and unambiguous. Modifications may be retroactive only to the date of service of notice of the motion to modify. Therefore, the district court had no statutory authority to credit derivative Social Security benefits received before Gillespie provided notice of his motion to modify. The original court order was fully enforceable until modified by a court upon motion. *See Dent v. Casaga*, 296 Minn. 292, 296, 208 N.W.2d 734, 737 (1973) ("We hold that a judgment of divorce providing for support payments in the future is a final judgment. This rule is subject to the right of a party to seek modification of the decree, but until such modification has been ordered, the decree is entitled to enforcement as originally entered."). In other

---

[5]     Gillespie understood that the original child support order had to be modified, as he made a motion to modify the court's June 2000 order.

words, prior to the obligor moving the district court for a modification, the obligee was legally entitled to both the derivative Social Security benefits and child support under the existing order.[6] Only upon modification could derivative benefits received by the obligee decrease Gillespie's obligation and thus retroactively modify the obligation back to the date of service of notice of the motion to modify.[7]

The dissent would hold otherwise and create a special exception for derivative Social Security benefits on the ground that the "only thing that changes is the source of a portion of the child support payment." This characterization misses the mark. Derivative Social Security benefits are not used to satisfy an obligor's child support obligation. Rather, upon a motion to modify the child support order, such benefits result in a recalculation and reduction of the obligor's obligation. *See* Minn. Stat. § 518A.34.

On the theory that this obligor made an "overpayment" and thus his children received more child support dollars than was equitable, the dissent asserts that today's decision will produce an "absurd and inequitable result." That is not correct. As the dissent notes, there are delays from the time an obligor applies for Social Security

---

[6] The obligee retains the payments made by both sources prior to service of notice of the motion to modify. We do not characterize this as an equitable gratuity, as urged by Dakota County, but as payments from two different sources to which the obligee is legally entitled.

[7] This analysis is consistent with federal law. In order to qualify for federal funding for child-welfare services, *see* 42 U.S.C. § 654(20) (2012), Minnesota must have a procedure requiring "that any payment or installment of support under any child support order . . . is . . . not subject to retroactive modification . . . except . . . with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given." 42 U.S.C. § 666(a)(9) (2012). Section 518A.39(e) is that procedure.

14

benefits to the time benefits begin to flow to the children through the obligee. Our decision gives the obligor, upon approval of benefits, an even stronger incentive to make a timely motion to modify the existing child support order.

An obligor can and should make a motion to modify whenever the obligor or the obligee experiences a significant change in circumstances, whether upon retirement, disability, or winning the lottery. The resulting modification of the child support order, taking into account both the obligor's and the obligee's changed financial circumstances, will be retroactive to the date of service of the notice of motion to modify. The choice of that date lies in the hands of the obligor. In this case, the obligor chose to make his motion 5 months after derivative Social Security benefits began to flow. Going forward, proactive obligors can avoid what the dissent would consider an "overpayment."

Our decision today is based on the plain words of Minnesota's child support law and the structure it creates. As the dissent correctly notes, other states are split on how and when the receipt of derivative Social Security benefits affects an existing support order. *Compare, e.g.*, *In re Marriage of Cowan*, 928 P.2d 214, 220 (Mont. 1996) (credit for derivative Social Security benefits not an improper retroactive modification), *with Newman v. Newman*, 451 N.W.2d 843, 845 (Iowa 1990) (to allow obligor to receive retroactive credit without a motion to modify "would be patently unfair to the custodial parent who has long since parted with the funds to support her charges").

On this subject, there are equitable arguments for both obligor and obligee. But "[e]quity follows the law," and we may not "disregard statutory law or grant relief prohibited thereby." *Kingery v. Kingery*, 185 Minn. 467, 470, 241 N.W. 583, 548 (1932).

15

As we said recently, "our task in this case, like any other is not to make legislative policy but to interpret and apply existing statutes . . . ." *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 77 n.5 (Minn. 2015).

### III.

The plain words of the child support statutes, read as a whole, control. Accordingly, we reverse the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

PAGE, Justice (dissenting).

I agree with the court's opinion up to Part II.B. At that point, the court's opinion goes off the rails. The court asserts that in *County of Grant v. Koser*, 809 N.W.2d 237, 244 (Minn. App. 2012), the court of appeals "misinterpreted the child support statutes " because "[s]ections 518A.34(f) and .31(c) are not independent mechanisms to offset an existing obligation by derivative Social Security benefits or to give credit for benefits received in excess of a newly modified order." Instead, the court concludes that, because "derivative Social Security benefits are an integral part of the calculation of the child support order," such benefits received are only considered to be in excess of the child support obligation upon notice of the motion to modify. Such a conclusion is inconsistent with the plain meaning of the unambiguous words used in the child support statutes.

The child support statutes provide that "the court *shall* subtract the amount of [Social Security] benefits from the other parent's new child support obligation" if such benefits "*are received* by one parent as a representative payee for a joint child based on the other parent's eligibility." Minn. Stat. § 518.34(f) (2014) (emphasis added); *see also* Minn. Stat. § 518A.31(c) (2014) (specifying that Social Security benefits "*shall also be subtracted from the obligor's net child support obligation*" if benefits "*are received* by the obligee as a representative payee for the child" (emphasis added)). Based on this language, it is clear that we are not talking about an offset, but a reduction in the amount that an obligor is obligated to pay out of pocket for child support under sections

518A.34(f) and 518A.31(c) once derivative benefits are *received*. Neither section 518A.34(f) nor section 518A.31(c) suggest that the obligor's net child support obligation is to be "offset" or otherwise reduced only after a modification of the original support order. Instead, they explicitly provide that the obligor's net child support obligation is to be reduced upon the *receipt* of derivative Social Security benefits by the nonobligor parent. Thus, the triggering event is the receipt of the derivative benefits by the dependent or the nonobligor parent, not a motion by the obligor to modify the original support order. Once the triggering event occurs, the net obligation of the obligor to the dependent or nonobligor parent "shall" be reduced by the amount of derivative benefits and any amount paid by the obligor after the derivative benefits are paid constitutes an overpayment of child support benefits and should be returned to the obligor.[1]

---

[1] The court takes issue with the fact that I do not identify a "mechanism" by which the obligor's net child support obligation would be reduced upon receipt of derivative Social Security benefits by the dependent or the nonobligor parent. The implication is that the court's reading of the child support statute is somehow more correct because the court specified a mechanism—a motion to modify. The court's reasoning suffers from significant flaws. First, as the court acknowledges, but then ignores, the "detailed statutory scheme" does not provide a mechanism by which the net child support obligation is reduced by the amount of derivative benefits. In other words, the court's "mechanism" is no more statutorily required than any other. Furthermore, I do not disagree that a motion to modify could be a valid means of formalizing the statutorily required reduction of the obligor's net child support obligation by the amount of derivative benefits. What I do disagree with is the court's conclusion that derivative benefits received by the dependent or the nonobligor parent are only considered to be in excess of the obligation upon notice of the motion to modify. Whether there is a motion to modify the child support obligation has no bearing on whether there is an excess payment. An excess payment occurs when the obligor pays the monthly support obligation and the dependent or the nonobligor parent also receives, for that month, derivative Social Security benefits.

(Footnote continued on next page.)

The court asserts that reducing the obligor's net child support obligation upon the nonobligor's receipt of derivative Social Security benefits, as required by statute, constitutes a retroactive modification of the child support order. Thus, according to the court, treating receipt of benefits as the triggering event would be patently unfair to the custodial parent and would violate federal and state laws that limit the retroactivity of child support modifications. The court's retroactivity rationale has no merit.

The rationale has no merit because the derivative Social Security payment does not alter the obligor's obligation to pay child support nor does it reduce the amount of child support received by the nonobligor parent. The only thing that changes is the source of a portion of the child support payment.[2] That is, the only thing being modified in this situation is the *source* of all or a portion of the child support payments; the obligor remains obligated for the full amount of child support set out in the child support order and the dependent or nonobligor parent still receives the full amount specified in the original support order. A majority of state appellate courts have recognized the same

(Footnote continued from previous page.)

More importantly, as discussed more fully below, the amount of the obligor's net child support obligation is not reduced merely because derivative Social Security benefits are received by the dependent or nonobligor parent. Only the source of part or all of the monthly child support payment changes.

[2] I do not mean to say that the obligor is not required to pay out-of-pocket any amount of child support obligation that remains after derivative benefits are subtracted from the net child support obligation. Moreover, if the presumptive child support obligation ultimately increases because of the effect of security derivative benefits on the obligor's gross income, the obligor would need to meet any increased obligation. The point is that, under Minn. Stat. §§ 518.34(f), 518A.31(c), an obligor cannot be required to duplicate the portion of his or her obligation covered by derivative benefits received by the dependents or nonobligor parent.

principle. *E.g.*, *In re Marriage of Cowan*, 928 P.2d 214, 220 (Mont. 1996) (concluding, consistent with the "majority" rule, that "a credit for [derivative] Social Security benefits does not retroactively modify the disabled parent's monthly child support obligation: *it merely changes the source* of the payments" (emphasis added)); *Crago v. Donovan*, 594 N.W.2d 726, 731 (S.D. 1999) (concluding that the court "join[s] the majority rule holding that substitution of Social Security benefits for a disabled parent's child support obligation does not constitute a retroactive modification of the original support order"). Notably, Minnesota's child support statute does not require the obligor to meet his child support obligation with any specific source of funds. Moreover, derivative Social Security benefits, like direct child support payments, originate in the obligor's earnings and assets. *See In re Marriage of Henry*, 622 N.E.2d 803, 809 (Ill. 1993) ("We conclude that because social security dependent disability benefits are earned by the noncustodial parent, made on behalf of such parent, and, in fact, paid at least in part with contributions from the noncustodial's own earnings, payment of social security dependent disability benefits satisfies a noncustodial parent's child support obligation."). Therefore, the court's repeated references to "retroactive modification" of the obligor's child support obligation fundamentally mischaracterize the payment of derivative Social Security benefits to the child support recipient.

Dakota County argues that the court of appeals' decision in *Koser*, which the court's holding here overrules, created an inequitable result for the dependent children and nonobligor parent. The county ignores the inequity its holding produces for the obligor while overstating the unfairness to the obligee. In effect, the county assumes that,

absent a motion to modify the child support obligation, the nonobligor parent has no notice that he or she is receiving an overpayment of the obligor's child support obligation. It is difficult to understand how the nonobligor parent is not on notice of such overpayment—particularly in a case like this one, in which the nonobligor parent received derivative Social Security benefits in addition to the obligor's regularly scheduled payment, with the result being that the nonobligor parent received nearly double the amount of child support originally ordered by the court. In order to avoid any inequity, either real or imagined,[3] the dependent or nonobligor parent need only avoid spending any amount received over and above the amount of court-ordered child support paid directly by the obligor.

At the same time, the county and the court minimize the inequity to the obligor by ignoring the fact that the obligor is not in fact obligated to pay the amount of derivative benefits received by the nonobligor parent. The net effect of the court's holding that the change in the obligor's child support obligation is not effective until formalized by a motion to modify the support order will be that, in essentially every case involving derivative Social Security benefits, the child support obligor will pay more in child support than he or she is obliged to pay *unless* he or she resorts to self-help and withholds child support payments in anticipation of derivative benefits being paid. That is so because in every case there is a delay between the time when Social Security benefits are

---

[3]      I strongly disagree with the county's suggestion that the dependent or nonobligor parent having to return the amount of money that a child support obligor overpays results in an inequity to the children or nonobligor parent.

applied for and the time benefits are approved. There is a further delay between the time benefits are approved and the receipt of the first benefit payment, which will include payments retroactive to the date benefits were approved. *See, e.g.*, *Koser*, 809 N.W.2d at 239 (noting that the obligor's application for RSDI benefits were approved in May 2010 and the obligee received a lump-sum derivative benefits payment that covered the period from July 2009 through May 2010, for the time the benefits application was pending). Given the delays and the fact that there will be no basis for a motion to seek a reduction in benefits until the dependent or nonobligor parent has received derivative Social Security benefits, the court's ruling will mean that an obligor will always be required to pay child support benefits not contemplated by the Legislature's statutory scheme and cannot receive credit for that overpayment. Such an absurd and inequitable result is inconsistent with the plain text of the statutes, and could not have been intended by the Legislature in adopting sections 518A.31(c) and 518A.34(f).

For these reasons, I respectfully dissent.