*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1066**

County of Dakota, ex rel., petitioner,
Respondent,

Michelle Marie Hinz, petitioner,
Respondent,

vs.

Bryan Arthur Rittweger,
Appellant.

**Filed September 2, 2025**
**Affirmed**
**Cochran, Judge**

Dakota County District Court
File No. 19WS-FA-19-909

Kathryn M. Keena, Dakota County Attorney, Brita A. Carnine, Assistant County Attorney, West St. Paul, Minnesota (for respondent County of Dakota)

Johanna P. Clyborne, Brekke, Clyborne & Ribich, L.L.C., Shakopee, Minnesota; and

Kala Swenson, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, Minnesota (for respondent Michelle Marie Hinz)

Francis Herbert White III, Francis White Law, PLLC, Woodbury, Minnesota (for appellant)

        Considered and decided by Schmidt, Presiding Judge; Reyes, Judge; and Cochran, Judge.

**COCHRAN**, Judge

Appellant filed a motion to modify his child-support obligation, alleging a substantial change in his income and requesting a reduction in his child-support arrearages. The child support magistrate (CSM) granted appellant's motion to reduce his child-support obligation but denied his request to reduce his child-support arrearages. The CSM also ordered appellant to make a monthly payment in a set amount to satisfy the arrearages.

Appellant challenges the CSM's order, arguing that the CSM abused her discretion when she did not reduce his arrearages and when calculating his monthly arrearage payment. Appellant also argues that certain child-support statutes are unconstitutional as applied. Because we discern no abuse of discretion and the constitutional arguments are not properly before us, we affirm.

## FACTS

Appellant Bryan Arthur Rittweger and respondent Michelle Marie Hinz are the parents of two children, who were aged 16 and 17 at the time of filing of the order at issue in this appeal. Rittweger and Hinz were never married, and Hinz had sole physical custody of the children. Respondent County of Dakota is the public authority charged with child-support enforcement and became involved due to Hinz's application for public assistance and child-support services.

In August 2019, the county filed a motion to establish child support. A CSM granted the county's motion and ordered Rittweger to pay $1,434 per month in child support and $160 in medical support. The CSM also determined that Rittweger owed Hinz $31,540.70

2

for past basic child support and owed the state $1,280 for past medical and dental expenses expended on behalf of the children.

In August 2023, the county filed a motion to hold Rittweger in contempt of court, alleging that he had $99,256 in arrearages on his child-support obligation. The district court subsequently ordered Rittweger to show cause as to why he should not be held in contempt.

On November 30, 2023, Rittweger filed and served the motion to modify child support at issue in this appeal. His motion requested a decrease in his basic monthly child-support obligation due to his inability to work. The motion also requested a reduction in his arrearages based on Hinz's receipt of social security disability income (SSDI) derivative benefits and veterans affairs (VA) apportionment benefits on behalf of the parties' joint children. In support of his motion, Rittweger filed an affidavit alleging that he had been adjudicated eligible for SSDI. He further alleged that Hinz received two lump sum SSDI derivative benefits on November 4, 2023—one for each child in the amount of $6,919.75—and thereafter received $485 per month in SSDI derivative benefits for each child. Rittweger also alleged that, since February 2021, Hinz had been receiving $450 per month in apportioned VA benefits on behalf of the children. Rittweger asserted that none of these benefits were credited towards his past-due child-support obligation and that these benefits amounted to at least "$32,429.50 in child support payments." Rittweger requested that his child-support obligation be credited for these benefits.

Hinz filed a responsive motion requesting that the CSM deny Rittweger's motion to modify child support and instead order Rittweger "to continue to pay any excess payments

3

and additional funds towards the arrears accrued." Hinz confirmed in her affidavit that she received the SSDI and VA apportionment benefits as detailed by Rittweger.

Prior to the motion hearing, the parties agreed that Rittweger's ongoing monthly child-support obligation should be reduced to zero dollars, effective November 1, 2023, as a result of his inability to work and because Hinz was receiving ongoing VA and SSDI benefits on behalf of the children. But the parties were not able to reach an agreement on the issue of child-support arrearages and whether the VA and SSDI benefits that Hinz had received on behalf of the children should be credited towards the arrearages accrued prior to the modification of Rittweger's child-support obligation.

Following a motion hearing, the CSM issued a written order denying Rittweger's motion to credit his arrearages balance with the amount that Hinz had received in lump sum SSDI benefits and monthly VA benefits. The CSM found that Rittweger had "not made any voluntary payments of child support since the 2019 order[,]" and that he owed over $100,000 in arrearages as of January 16, 2024 but the "amount has decreased due to payments withheld from his social security disability since November 1, 2023." The CSM determined that granting Rittweger's request to credit his arrearages would amount to an impermissible retroactive modification of Rittweger's child-support obligation. In reaching her decision, the CSM relied primarily on the Minnesota Supreme Court's decision in *Dakota County v. Gillespie*, 866 N.W.2d 905 (Minn. 2015). Based on *Dakota County*, the CSM reasoned that child-support payments and dependent VA and SSDI benefits are "distinct entitlements due to the children from separate sources." Thus, the CSM determined that the VA and SSDI benefits were not child-support payments and

4

therefore could not be applied to Rittweger's arrearages without being considered a retroactive modification of child support.

The CSM also ordered Rittweger to make monthly payments towards his arrearages. Based on the child-support guidelines, the CSM determined that Rittweger's monthly support obligation would be $1,181. But, in calculating the obligation, the CSM did not include the usual downward adjustment for court-ordered parenting time. Instead, the CSM explained that no adjustment was made because Rittweger's parenting time was "not actually taking place." The CSM also noted that Rittweger had not made any payments towards his child-support obligation, which had caused "financial hardship for the children in their household." Consequently, the CSM determined that the monthly payment amount, without the parenting-expense adjustment, would "result in the payment of the arrears balance within a reasonable time that [would] benefit the joint children and [would] not cause financial hardship upon [Rittweger] given his current level of income." Rittweger did not seek review of the CSM's decision by the district court. *See* Minn. R. Gen. Prac. 376.03 (allowing for a motion for review of a CSM's order by a district court judge).

Rittweger appeals.

## DECISION

Rittweger challenges the CSM's order on his motion to modify child support, arguing that the CSM abused her discretion when she denied his request to reduce his child-support arrearages by an amount equal to the sum of the SSDI derivative benefits and VA apportionment benefits received by Hinz on behalf of their joint children. He also contends that the CSM abused her discretion when she did not make an adjustment for Rittweger's

5

court-ordered parenting time in her calculation of his monthly arrearage payments. We consider each argument in turn.

**I.      The CSM did not abuse her discretion when she denied Rittweger's request to credit his child-support arrearages accrued prior to the modification of his child-support obligation based on the VA apportionment and SSDI derivative.**

Rittweger raises two arguments in support of his contention that the CSM abused her discretion when she denied his request to reduce his child-support arrearages to account for Hinz's receipt of VA apportionment and SSDI derivative benefits on behalf of the children. First, Rittweger argues that the CSM erred as a matter of law in her application of child-support statutes and in her reliance on *Dakota County*. In the alternative, Rittweger argues that the CSM's reliance on certain child-support statutes violates the Supremacy Clause and the Fourteenth Amendment Due Process Clause of the United States Constitution. Neither argument is persuasive.

*Motion to Modify Arrearages*

"The district court has broad discretion when deciding child-support modification issues." *Shearer v. Shearer*, 891 N.W.2d 72, 77 (Minn. App. 2017) (quotation omitted). We review an order on a motion to modify child support for an abuse of discretion. *Haefele v. Haefele*, 837 N.W.2d 703, 708 (Minn. 2013).[1] "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying

---

[1] "On appeal from a CSM's ruling, the standard of review is the same as it would be if the decision had been made by a district court." *Hesse v. Hesse*, 778 N.W.2d 98, 102 (Minn. App. 2009).

6

the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

Under Minnesota Statutes section 518A.39 (2024), a court may modify a child-support obligation in certain circumstances including when an obligor has a substantially decreased gross income. Minn. Stat. § 518A.39, subd. 2(a). But a motion to modify child support generally may not be made retroactive beyond the date when the party seeking modification served the notice of motion for modification on the responding party. Minn. Stat. § 518A.39, subd. 2(f). And "[b]ecause forgiveness of arrearages is a retroactive modification of support, arrearages accruing prior to service of the modification motion may not be forgiven." *Allan v. Allan*, 509 N.W.2d 593, 597 (Minn. App. 1993). However, the district court may adopt an alternate effective date for the modification of child support upon agreement of the parties. Minn. Stat. § 518A.39, subd. 2(f), (l).

Here, Rittweger served his motion to modify child support on Hinz on November 30, 2023. Pursuant to that motion, the parties agreed to modify Rittweger's child-support obligation effective November 1, 2023. Consequently, any modification of his child support could not be made retroactive prior to November 1, 2023, including forgiveness of arrearages. *Allan*, 509 N.W.2d at 597; Minn. Stat. § 518A.39, subd. 2(f). As explained below, the VA apportionments and SSDI derivative benefits paid to Hinz on behalf of the joint children did not satisfy any portion of Rittweger's existing child-support obligation. *See Dakota County*, 866 N.W.2d at 913 (stating that SSDI derivative benefits "are not used to satisfy an obligor's child support obligation"). Consequently, Rittweger's request that the CSM reduce his arrearages by the amount of the SSDI lump sum benefits

7

and VA apportionment benefits that Hinz received on behalf of the parties' joint children is a request to modify child support beyond the date agreed to by the parties. *See* Minn. Stat. § 518A.39, subd. 2(f) (stating the district court may adopt an alternate effective date for a modification of child support); *Allan*, 509 N.W.2d at 597 (stating that "forgiveness of arrearages is a retroactive modification of support"). Therefore, the CSM did not abuse her discretion when she denied Rittweger's request to reduce his child-support arrearages based on Hinz's receipt of the SSDI lump sum benefits and VA benefits.

We are not persuaded otherwise by Rittweger's argument that Minnesota Statutes sections 518A.31(c) and 518A.34(g) (2024) require the application of these benefits to his child-support arrearages. Minnesota Statutes section 518A.31 (2024) governs the treatment of SSDI and VA benefits received on behalf of a child. That statute provides that, when calculating a parent's presumptive child-support obligation, SSDI benefits and apportioned VA benefits "provided for a joint child shall be included in the gross income of the parent on whose eligibility the benefits are based." Minn. Stat. § 518A.31(a). The statute further provides that, if SSDI benefits or apportioned VA benefits are "provided for a joint child based on the eligibility of the obligor, and are received by the obligee as a representative payee for the child, . . . then the amount of the benefits shall also be subtracted from the obligor's net child support obligation." *Id.* (c). And, in calculating a parent's presumptive child-support obligation, the district court is required to subtract SSDI derivative benefits and apportioned VA benefits that are paid to the obligee on behalf of the joint children. Minn. Stat. § 518A.34(a), (g) (2024). But these provisions do not

8

address *modification* of an existing child-support obligation or retroactive forgiveness of child-support arrearages.

The supreme court's decision in *Dakota County* is instructive on this issue. In *Dakota County*, the supreme court interpreted the language of sections 518A.31(c) and what is now 518A.34(g)[2] in the context of SSDI derivative benefits. 866 N.W.2d at 909-11. There, the obligor argued that he should receive credit for an "overpayment" of his existing child-support obligation due to SSDI derivative benefits that the obligee received on a monthly basis on behalf of the children. *Id.* at 908-09. The supreme court concluded that SSDI derivative benefits "are not used to satisfy an obligor's child support obligation" because sections 518A.31(c) and 518A.34(g) are not independent mechanisms to offset an existing obligation. *Id.* at 913. Instead, sections 518A.31(c) and 518A.34(g) provide that an obligor's SSDI derivative benefits received by the obligee on behalf of the joint children be considered as a part of the *calculation* of the obligor's child-support obligation. *Id.* at 911-12. The supreme court continued that, in the absence of a statutory exception, an obligor's child-support obligation can only be recalculated by modification. *Id.* at 912. And the supreme court emphasized that—under the then-applicable version of the support modification statute—modifications to child-support obligations "may be retroactive only

---

[2] In *Dakota County*, the supreme court cites section 518A.34(f) (2014) when discussing the treatment of SSDI and VA benefits received by a parent on behalf of a joint child. 866 N.W.2d at 911. Effective August 1, 2018, the language of section 518A.34(f) was moved to section 518A.34(g). 2016 Minn. Laws ch. 189, art. 15, § 18, at 1117-19.

to the date of service of notice of the motion to modify."[3]  *Id.*  As a result, the supreme court concluded that "prior to the obligor moving the district court for a modification, the obligee was legally entitled to both the derivative Social Security benefits and child support under the existing order."  *Id.* at 912-13.

As *Dakota County* makes clear, Rittweger's reliance on sections 518A.31(c) and 518A.34(g) to argue his arrearages should be reduced confuses the *satisfaction* of a parent's existing child-support obligation with the *calculation* of the parent's child-support obligation.  As discussed above, the supreme court determined in *Dakota County* that sections 518A.31(c) and 518A.34(g) do not authorize the subtraction of benefits paid to the obligee on behalf of the children to "*satisfy* an obligor's child support obligation."  *Id.* at 913 (emphasis added).  Instead, sections 518A.31(c) and 518A.34(g) allow for the subtraction of benefits paid to the obligee on behalf of the children when *calculating* a parent's basic child-support obligation. *Id.* at 912.  And because Rittweger's child-support obligation could be recalculated only pursuant to a motion to modify child support, Rittweger was not entitled to credit for SSDI and VA benefits paid to Hinz on behalf of the

---

[3] On August 1, 2015, shortly after the supreme court filed its decision in *Dakota County,* an amendment to section 518A.39, subdivision 2, went into effect, which allowed for parties to agree to an alternate effective date for a child-support order and the modification of child support to that date.  2015 Minn. Laws ch. 30, art. 1, § 11, at 280-82 (codified at Minn. Stat. § 518A.39, subd. 2 (e), (l)); *see* Minn. Stat. 645.02 (2024) (stating that a law not making appropriations takes effect "August 1 next following its final enactment, unless a different date is specified in the act").  Because Rittweger does not assert that any arrearages occurred between November 1, 2023—the agreed to effective date for the modification of child support—and November 30, 2023—the date of service of the motion to modify child support—the amendment does not affect our analysis.

children towards his arrearages existing as of November 1, 2023—the agreed upon date for modification of his child-support obligation. *Id.* at 912-13.[4]

Rittweger argues that, notwithstanding the supreme court's holding in *Dakota County*, the CSM should have credited his arrearages for the SSDI and VA benefits paid to Hinz for two reasons. First, Rittweger argues that this case is distinct from *Dakota County* because *Dakota County* addressed an obligor's request for *prospective* credit for SSDI derivative benefits already paid in excess of an obligor's existing child-support obligation, whereas here Rittweger is requesting that the VA and SSDI benefits be applied *retroactively* to his arrearages existing as of November 1, 2023. But Rittweger does not explain why this difference should result in his arrearages being credited. Regardless of whether the benefits are being credited prospectively to future child-support payments or retroactively to arrearages, the request is still to apply the SSDI and VA benefits "to satisfy an obligor's child support obligation." *Id.* at 913. As described above, SSDI and VA benefits are used to calculate a parent's child-support obligation rather than to satisfy a child-support obligation. *See id.* (stating that "upon a motion to modify the child support order, such benefits result in a *recalculation* and reduction of the obligor's obligation" (emphasis added)). Rittweger also fails to address the bar to retroactive modification of child support, including arrearages that accrued before effective date of a modification of child support. *See* Minn. Stat. § 518A.39, subd. 2(f); *Allan*, 509 N.W.2d at 597.

---

[4] We note that the legislature has made relevant amendments to sections 518A.31 and 518A.34(g). 2023 Minn. Laws ch. 70, art. 14, §§ 27, at 3959-60, 30, at 3960-62. However, these amendments are not applicable in this case because the CSM's order was entered on May 3, 2024, before these amendments went into effect on January 1, 2025. *Id.*

Second, Rittweger argues that the VA apportionment should be treated differently than the SSDI derivative benefits because *Dakota County* only concerned SSDI derivative benefits, and a veteran has a constitutionally protected property interest in their VA benefits. But an SSDI recipient also has a constitutionally protected property interest in their SSDI benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Notwithstanding this protected interest, our supreme court determined that sections 518A.31(c) and 518A.34(g) do not permit a child-support obligation to be satisfied by SSDI derivative benefits prior to a motion to modify. *Dakota County*, 866 N.W.2d at 913. And the United States Supreme Court has said that Congress intended veterans' disability benefits "to be used, in part, for the support of veterans' dependents." *Rose v. Rose*, 481 U.S. 619, 631 (1987). Also, sections 518A.31(c) and 518A.34(g) address "veterans' benefits" alongside "Social Security" in specifying what amounts get deducted when calculating a parent's basic child-support obligation. *See* Minn. Stat. § 518A.31(c) (stating that if "Social Security or *apportioned veterans' benefits* are provided for a joint child," they are subtracted from an obligor's net child-support obligation when the obligee receives the benefits on behalf of the joint child (emphasis added)). Thus, while *Dakota County* concerned only SSDI derivative benefits, the CSM did not abuse her discretion when she concluded that the holding in *Dakota County* also applied to VA apportionment benefits.

Therefore, while Rittweger is to be commended for his military service, the CSM did not misapply the law when she denied Rittweger's motion to credit his arrearages that were accrued prior to the effective date of the modification of Rittweger's child-support obligation to account for the VA benefits and SSDI lump sum payments received by Hinz

12

on behalf of the children. *See* Minn. Stat. § 518A.39, subd. 2(f), (l) (stating that the parties may agree to an effective date for a modification of child support); *Allan*, 509 N.W.2d at 597 (stating that "forgiveness of arrearages is a retroactive modification of support").

*Constitutional Challenge*

Rittweger also argues that sections 518A.31(c) and 518A.34(g) are unconstitutional as applied in this case. Rittweger argues that these statutes violate the Supremacy Clause and Fourteenth Amendment Due Process Clause of the United States Constitution. Respondents argue that this argument is not properly raised on appeal because Rittweger did not raise this issue with the CSM. We agree.

"[C]onstitutional issues that were not raised in the [district] court" cannot be raised for the first time on appeal. *In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981); *see also Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts "must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it" (quotation omitted)). The record reflects that Rittweger failed to raise the issue of the constitutionality of sections 518A.31(c) and 518A.34(g) below. Before the CSM, Rittweger's counsel stated only that he was "*considering the possibility* that it may become necessary to challenge the constitutionality of [sections 518A.31(c) and 518A.34(g).]" (Emphasis added.) But there is no indication in the record that Rittweger ever actually challenged the constitutionality of the statutes before the CSM. And, at oral argument, Rittweger conceded that the above statement is the only statement that he made to the CSM regarding the constitutionality of the statutes. Because Rittweger did not present this argument to the CSM, Rittweger's

13

constitutional challenge to the CSM's decision is not properly before us and we decline to consider the issue. *See C.L.L.*, 310 N.W.2d at 557; *Thiele*, 425 N.W.2d at 582.

## II. The CSM did not abuse her discretion in calculating Rittweger's monthly arrearage payment.

Rittweger further argues that the CSM abused her discretion by ordering Rittweger to pay a monthly arrearage payment that did not include a parenting-time expense adjustment. We review a decision of a CSM on a motion to modify child support for an abuse of discretion. *Putz v. Putz*, 645 N.W.2d 343, 347-48 (Minn. 2002). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey*, 975 N.W.2d at 506 (quotation omitted).

An order to pay child-support arrearages is defined by statute to be a "support order." Minn. Stat. § 518A.26, subd. 21(a)(2) (2024). A support order "shall specify the percentage of parenting time granted to or presumed for each parent" for purposes of calculating the "parenting expense adjustment." Minn. Stat. § 518A.36, subd. 1(a) (2024). And when calculating the presumptive child-support obligation, the district court shall "apply the parenting expense adjustment." Minn. Stat. § 518A.34(b)(6) (2024). The parenting expense adjustment "reflects the presumption that while exercising parenting time, a parent is responsible for and incurs costs of caring for the child." Minn. Stat. § 518A.36, subd. 1(a). But the district court may deviate from the presumptive child-support obligation, among other reasons, "to encourage prompt and regular payments of child support and to prevent either parent or the joint children from living in poverty."

Minn. Stat. § 518A.43, subd. 1 (2024). When deviating, the district court must consider several statutory factors. *Id.* Most relevant to the issue before us is the first factor, which requires consideration of "all earnings, income, circumstances, and resources of each parent, including real and personal property, but excluding income from excess employment." *Id.*, subd. 1(1). When a district court decides to deviate from the presumptive child-support obligation, the district court must make written findings that address: (1) each parent's gross income; (2) each parent's income for determining child support; (3) the presumptive child-support obligation as calculated pursuant to section 518A.34; (4) the reasons for the deviation; and (5) how the deviation serves the best interests of the child. Minn. Stat. § 518A.37, subd. 2 (2024).

In her order, the CSM set Rittweger's monthly arrearage payment amount with "no credit for parenting time." The CSM decided not to apply the parenting-time expense adjustment because Rittweger's parenting time was "not actually taking place." In doing so, the CSM deviated from the presumptive child-support obligation for the arrearages.

Rittweger argues that the CSM abused her discretion by failing to include the parenting expense adjustment. Rittweger is incorrect. While the CSM was required to apply the parenting expense adjustment in calculating Rittweger's presumptive obligation pursuant to section 518A.34(b)(6), the CSM had the authority to deviate from this presumption. Minn. Stat. § 518A.43, subd. 1 (authorizing a district court to deviate from the presumptive child-support obligation after considering certain factors).

Here, the CSM properly deviated from Rittweger's presumptive obligation when ordering Rittweger's monthly arrearage payments. First, the CSM's order reflects that the

15

CSM considered the required factors. *See* Minn. Stat. § 518A.43, subd. 1 (listing the factors that the CSM was required to consider). In her findings of fact, the CSM considered "Rittweger's income and expenses" and determined that Rittweger's obligation without the parenting expense adjustment would "not cause financial hardship upon [Rittweger] given his current level of income." As a result, the CSM did consider Rittweger's "earnings, income, circumstances, and resources" and ensured that the order would not impoverish Rittweger, indicating that the CSM took into consideration the required factors when deviating from the presumptive obligation. *Id.*

Further, the CSM made the written findings required by section 518A.37 to support the deviation from the presumptive obligation. The CSM appended a "Child Support Guidelines Worksheet" to her order which included the parents' gross income, income for determining child support, and Rittweger's support obligation with the parenting-expense adjustment applied. *See* Minn. Stat. § 518A.37, subd. 2 (requiring written findings of each parent's income, each parent's income for determining child support, and the child-support obligation as computed by section 518A.43). The CSM also specified her reason for deviating from the presumed obligation, noting that the parenting expense adjustment was not made because Rittweger's parenting time was "not actually taking place." *See id.*, subd. 2(4); *see also* Minn. Stat. § 518A.36, subd. 1(a) ("The parenting expense adjustment under this section reflects the *presumption* that while exercising parenting time, a parent is responsible for and incurs costs of caring for the child." (emphasis added)). Finally, the CSM described how the deviation served the best interests of the children, stating that Rittweger's failure to make any payments on his child-support obligation had caused the

16

children's household "financial hardship" and that the deviation would allow for the payment of Rittweger's arrearages in a "reasonable time that will benefit the children." *See* Minn. Stat. § 518A.37, subd. 2(5) (requiring written findings describing how the deviation serves the best interests of the children). As a result, the CSM made the necessary written findings to support the deviation from Rittweger's presumed obligation on his arrearages.

In sum, the CSM did not abuse her discretion by declining to apply the parenting-expense adjustment when ordering Rittweger's monthly payment on his arrearages.

**Affirmed.**